### E. S. GOODRICH, Appellant, vs. G. W. MOORE, Respondent.

Courts will sometimes interfere to protect parties by Writ of Injunction, even where a legal action may be maintained, yet in such cases it is only where irreparable injury would be done, unless they were entitled to more immediate relief than that which they would obtain at law.

But they will not execute their powers for the enforcement of right or prevention of wrong, in the abstract, and where no actual benefit is to be derived by the party who seeks to exercise such right, nor injury suffered by the commission of the wrong complained of.

A Constitutional Convention is the highest Legislative Assembly recognized in law, invested with the right of enacting or framing the Supreme Law of the State.   It has full control of all its proceedings, and may provide in such manner as it sees fit, to perpetuate its records.   And although the Convention may have been called together by Legislative authority, that body has no right to select officers for the Convention, or otherwise control the transaction of its legitimate business.

This was an application made by the State Printer, E. S. Goodrich, to the District Court of Ramsey County, for a Writ of Injunction to restrain the Defendant Moore from proceeding with the publication of the journals and proceedings of the Constitutional Convention, presided over by the Hon. St. A. D. Balcombe, during the months of July and August, 1857, which journals and proceedings the Plaintiff claimed, were

part and parcel of the printing required by law to be done by the State Printer, as accruing during the recess of the Legislative Assembly, and for which printing an appropriation of $7,000 had been made by the Legislature of the State of Minnesota. The Defendant claimed a right to perform the work, by virtue of a contract with the President of said Convention, and that the appropriation was made in view of such contract, and that the work was not incidental to the office of State Printer.

The writ was issued, but was afterwards vacated on motion. The Plaintiff appeals from the order dissolving the Injunction.

The following are the points and authorities of counsel for the Appellant :

*First.* The order of Sept. 9, 1858, dissolving the injunction theretofore allowed in said action, by his Honor Judge Palmer, and which order is appealed from is an appealable order. *Vide Subdivision 2 of Sec.* 18 *of the Session Laws of* 1856, *p.* 12.

*Second.* Goodrich, the Appellant, being beneficially interested and the real party in interest, the action was properly brought in his name. *R. S. p.* 333, *Sec.* 27.

*Third.* It is an action to enforce a right and prevent a wrong and not for damage, and no averment of special damage is necessary. For the reason above, the injunction was properly allowed in the cause, to prevent the Respondent from doing a wrong. *Atty. Gen. vs. N. J. R. R. & Trans. Co.,* 2 *Green's Ch. Rep.* 106 ; *Story's Eq. Juris. Sec.* 862, *and cases cited* ; *Eden on Injunctions,* 2 *Am. Ed. p.* 337.

*Fourth.* The manuscript mentioned in the complaint, to prevent the printing of which, by the Respondent this action was brought, is incidental printing, accruing during the recess of the Legislature, and belongs to the Territorial or State Printer. *Vide S. Laws* 1856, *p.* 24, *Sec.* 4.

*Fifth.* It is Territorial printing, because the Convention assembled by *authority* of the Legislature, and the money for paying the expenses thereof was appropriated out of the Territorial Treasury. *Session Laws of* 1857, *p.* 343, *Secs.* 1 *and* 3.

*Sixth.* The Appellant was the Territorial or State Printer,

and had a vested right in and to the manuscript, and is entitled to the possession of the same for the purpose of printing and publishing the same as Territorial or State Printer. *Vide Journal of the Legislative Assembly for* 1857, *p.* 31, *and the Journal of the State Legislature for* 1858, *p.* 40. He had executed his official bond as required by Statute, and entered upon his duties. *R. S. p.* 109, *Secs.* 1 *and* 3.

*Seventh.* The Constitutional Convention had no power, other than to make a Constitution and provide for its submission to the people. It had no power to divert any of its printing from the State or Territorial Printer.

*Eighth.* The printing being such as belongs of right to the State or Territorial Printer, neither the Convention nor the Legislature had any power by resolution or otherwise to take it from that officer, except in the manner provided by *R. S. p.* 88, *Sec.* 2, *Sub. Div.* 6.

*Ninth.* The Territorial Printer being entitled to do the incidental printing, *of right,* the Legislature has no power to impair that right.

The points and authorities of counsel for Respondent, are not on file.

VAN ETTEN & OFFICER, and BRISBIN & BIGELOW, for Appellant.

COOPER & JENNISON, and SMITH & GILMAN, for Respondent.

*By the Court.*—I. ATWATER, J. The motion in the Court below was to vacate the order granting the Injunction in this cause, and to dissolve the same.

The motion was granted, and we think properly. It is a well settled rule that an injunction ought not to be granted, unless the injury is pressing and the delay dangerous, or as stated by some authorities, where the injury might be irreparable. *Barb. Chan. Prac. Vol.* 1. *p.* 608, *Ogden vs. Kip.* 6 *John. Ch. R.* 60. *N. Y. Printing Co. vs. Fitch,* 1, *Paige,* 97. *Dan. Ch. Prac.* 3 *Vol. p.* 1854. *Jerome vs. Ross,* 7 *Barb. Ch. R.,* 315·

In this case it does not appear from the complaint but that the Plaintiff has a complete and adequate remedy at law, for

any injury he may sustain by the publication complained of. And although Courts will sometimes interfere to protect parties by writ of injunction, even where a legal action may be maintained, yet in such cases it is only where irreparable injury would be done, unless they were entitled to more immediate relief than that which they could obtain at law. The complaint entirely fails to show that such would be the case in the present instance. Indeed it is questionable whether the complaint shows that the Plaintiff would suffer any injury at all from the performance or continuance of the acts of the Defendant which the Plaintiff seeks to enjoin.

The complaint states that "the value of the printing and publication of said manuscript ordered by said convention, at and for the price fixed by law, to be paid to the State Printer, is worth and of the value of about $7000"

This allegation is equivocal, and is far from being equivalent to a direct statement that the Plaintiff would derive that amount of benefit from doing the printing and publication referred to, or would suffer that amount of injury by being deprived of it by the Defendant. There is no allegation whatever that the Plaintiff would derive a profit from the printing and publication of the manuscript he seeks to obtain, nor that he would suffer an actual loss or damage from being deprived of it. And even had there been such allegation, it does not appear but that the Defendant is able to respond in law to any pecuniary damage that may be suffered by the Plaintiff.

It is contended by the counsel for the Plaintiff, that this is an action to enforce a *right* and prevent a wrong, and not for damage, and that no averment for special damage is necessary.

But Courts of Equity will not exercise their powers for the enforcement of right or prevention of wrong, in the abstract, and where no actual benefit is to be derived by the party who seeks to exercise such right, nor injury suffered by the commission of the wrong complained of. And though such benefit or injury is not always or necessarily of a pecuniary nature, and to be estimated in dollars and cents, yet in the case at bar, it must be such, if any, as none other is attempted to be alleged. And the Plaintiff having failed, for the reasons above stated, to show that he will suffer any pecuniary damage, or even

if suffered, that he has not an adequate remedy at law, the injunction was properly dissolved.

The notice of motion only asks for the Defendant to show cause why the order granting the injunction should not be vacated. The order made by the Judge, not only dissolved the injunction, but dismissed the complaint with costs. This would have been error, except on consent of counsel to consider the whole case on the motion to vacate, which consent, we infer from the fact that on the argument before this Court no objection was taken to the order on this ground, and the whole merits of the case were discussed.

We may therefore further consider whether the complaint contains any cause of action.

The Plaintiff bases his right of printing and publishing the manuscript described in the complaint, principally upon the ground that he was elected Territorial Printer by the Legislature of the Territory of Minnesota, in January, 1857, for the ensuing year; and in December, 1857, was elected State Printer for the succeeding year, pursuant to law, and had qualified and entered upon the discharge of his duties as such. He alleges that it was his duty as such State Printer, "to do the incidental printing of each House of the Legislature, to print the journals and pamphlet laws, and all such other Territorial or State printing as may accrue during the recess of the Legislative Assembly." There is also an allegation that the Legislature appropriated $30,000 for the expenses of a Constitutional Convention, including the printing and all other incidental expenses.

The "incidental printing" mentioned in the Statute under which the Plaintiff claims, (*vide Sess. Laws* 1856, *p.* 24, *Sec.* 4,) is therein expressed to be the incidental printing for "each House of the Legislative Assembly of this Territory," and consequently cannot apply to the printing of the Proceedings of the Constitutional Convention, or that of any body claiming to act as such. There is a further clause in the Section referred to, which requires the Territorial Printer "to do such other Territorial printing as may occur during the recess of the Legislative Assembly." It seems improbable that the Legislature in using this language intended to include such printing

as that claimed in the complaint. At the time of the passage of this act, Congress had not authorized the citizens of the Territory to take the initial steps for calling a Constitutional Convention.

The question had then been scarcely mooted. It was more than a year afterwards, before steps were taken by the people, having that end in view. The language above quoted, by a fair construction, had reference to the ordinary current and necessary requirements of Territorial business of that kind.

There is no reason to suppose that at the time of the passage of this act, the Legislature had at all in view the assembling of a Constitutional Convention, nor that they assumed the right in any manner to control its proceedings or interfere with its legitimate functions.

But even had the Legislature intended and attempted to claim and exercise the act of providing a printer for the Constitutional Convention, it would have been an unauthorized and unwarrantable interference with the rights of that body. The admission of such a right in the Legislature, would place the Convention under its entire control, leaving it without authority even to appoint or elect its own officers, or adopt measures for the transaction of its legitimate business. It would have less power than a town meeting, and be incompetent to perform the objects for which it convened. It would be absurd to suppose a Constitutional Convention had only such limited authority. It is the highest Legislative Assembly recognized in law, invested with the right of enacting or framing the Supreme Law of the State. It must have plenary power for this, and over all the incidents thereof. The fact that the Convention assembled by authority of the Legislature renders it in no respect inferior thereto, as it may well be questioned, whether, had the Legislature refused to make provision for calling a Convention, the people in their sovereign capacity would not have had the right to have taken such measures for framing and adopting a Constitution as to them seemed meet. At all events, there can be no doubt but that, however called, the Convention had full control of all its proceedings, and may provide in such manner as it sees fit to perpetuate its records either by printing or manuscript, or may refuse to do either.

But if there were any doubt on this question, the action of the Legislature subsequent to the Constitutional Convention, ( *Vide Session Laws*, 1858, *p.* 54,) has removed it, in appropriating $7,000 for the printing and publication ordered by the Convention presided over by the Hon. St. A. D. Balcombe. This recognized in express terms the contract made by him and ratifies the same. For, as remarked by the Court below, " the appropriation is not to pay for printing the debates and proceedings of that Convention generally, or as the Legislature may hereafter direct, but, the printing and publication ordered by," &c. Now what was the order of that Convention? Why, that the President should contract with some one to print 2,000 copies at a certain rate, which said copies were to be disposed of in a specified manner. The President did so, and the Legislature appropriated a certain sum to pay for the job. The *order* was not simply that 2,000 copies should be printed, but that the President should select a printer to perform the work. One part of the order cannot be revoked and the other held valid, and the phraseology of the appropriation bill, leaves no room to doubt that the persons selected to do the work are to receive the stipulated price therefor.

The order of the District Court must be affirmed.