E. E. TEEPLE, Appellee, v. HAWKEYE GOLD DREDGING CO., Appellant.

Corporations: ISSUANCE OF STOCK: ACTION FOR VALUE: PLEADINGS.
1  In an action for the value of corporate stock claimed as compensation for services, an allegation in the answer that subsequent to the performance of the service the corporation became involved in internal difficulties, and that its records failed to show the names of persons entitled to stock was properly stricken because without merit as a defense; especially as there was no alleged difficulty respecting the stock claimed by plaintiff.

Same: DELIVERY OF STOCK: ACTION FOR VALUE. A corporation is
2  not required to personally deliver stock which it has contracted to issue; upon its allowance and notice it becomes the duty of the claimant to request its issuance and delivery, in default of which he cannot convert his claim into a demand for a money judgment based on the market value of the stock.

Same: TENDER AFTER SUIT. In a suit for the value of corporate
3  stock because of alleged failure to issue and deliver the same, the defendant may plead the issuance and tender thereof, even though no demand was made, and that it brings the stock into court for plaintiff's use and benefits, on the theory that such tender amounts to an offer to waive demand for its issuance and as evidence of its willingness to make delivery and thus avoid further controversy.

Same: EVIDENCE. In an action for the value of corporate stock
4  claimed for services rendered under a contract with an agent of the corporation, the plaintiff should not be denied the right to give the details of his employment because the authority of the agent was not shown, where the defendant in effect alleged in its answer that it had issued and tendered the stock to plaintiff and offered the same in court for his benefit.

**Same:** EVIDENCE OF VALUE. One claiming the value of corporate stock in default of its issuance to him must show demand and refusal to deliver the same before he is entitled to prove its value.

**Same:** EVIDENCE OF RATIFICATION. On an issue of ratification of the contract of an agent for the issuance of corporate stock in payment for his services, the articles of incorporation governing the issuance of stock, authorizing the employment of agents and fixing the liability of the corporation for their acts, are admissible; and where the corporation's governing body is a board of directors, the minutes of the board proceedings are also competent on the issue of ratification of the acts of an agent.

**Appeal:** SCOPE OF REVIEW. Although both parties at the close of the evidence move for a directed verdict, neither can insist as against the other that the appellate court is limited, in reviewing the action of the trial court, to a consideration of the correctness of its findings of law.

**Corporations:** CONTRACTS OF AGENTS: RATIFICATION: EVIDENCE. Where a right of recovery against a corporation upon a contract made by an agent prior to organization depends upon ratification of the contract, it must be by the officer or governing body having authority to make such a contract, and the ratification must be upon full knowledge of the facts. Evidence held insufficient to show ratification.

**Issuance of stock:** DEMAND: ACTION FOR VALUE. A demand upon a corporation for the issuance of stock must be made upon the officer or governing body authorized to issue the stock; and a demand by letter is not sufficient to support an action for its value, since the corporation is not required to perform any other act than that of making manual delivery when called upon for that purpose.

**Same:** REFUSAL TO ISSUE STOCK. Delay in the issuance of capital stock of a corporation must be unreasonable to amount to a refusal to issue the same, and the question thus presented is for the jury.

*Appeal from Hardin District Court.*— Hon. J. H. Richards, Judge.

Tuesday, February 11, 1908.

Action at law to recover the money value of certain shares of the capital stock of the defendant company, to

which plaintiff claims he was entitled, and which defendant refused to issue to him.    There was a directed verdict in favor of plaintiff, and defendant appeals.— *Reversed.*

*Crissman & Sargent,* for appellant.

*Albrook & Lundy,* for appellee.

BISHOP, J.— As conceded in the pleadings of both parties, the defendant is a corporation organized under the laws of the province of British Columbia, Dominion of Canada. The answer fixes the time of its organization as of date May 19, 1904, and this is nowhere questioned in the record.    In his petition plaintiff alleges that in May, 1904, he entered into an oral contract with one B. B. Bliss, a representative of the defendant company, by the terms of which he, plaintiff, was to sell stock of the company, and for every ten shares sold by him he was to become entitled to, and the company was to issue to him, one share of stock.    And he says that, acting under said agreement, he sold a sufficient number of shares to entitled him to 8,150 shares as and for his compensation.    He alleges repeated demands, both oral and in writing, for the issuance of the stock to him, and that such demands have been refused.    The writings referred to are set out in the petition, and consist of letters written by plaintiff to officers of the company, and answers thereto received. It is admitted in the petition, in effect, however, that in September, 1905, there was sent to plaintiff by the president of the company shares to the number of eight thousand, one hundred and fifty, evidenced by four certificates, but it is alleged that such certificates bore upon their face a typewritten indorsement in substance that the same should not be entitled to participate in the assets of the company in case of liquidation until all stock paid for in cash had first been paid in full.    And plaintiff says that he returned such stock, saying in his letter of transmittal that " the same don't seem

to fill the bill, and believing you have no right to restrict as to character of the stock." The value of the eight thousand, one hundred and fifty shares is alleged to be $1,222, and judgment is demanded for that sum.

The answer is in one count, and for convenience of reference we shall attach numbers to our statement of the matters of fact pleaded: (1) Denial is made of authority in Bliss to make any contract for the employment of plaintiff; and it is denied that he, Bliss, had authority to contract on behalf of the defendant company for the sale or issuance of any of the shares of its capital stock. (2) It is alleged that in August, 1904, it became known to the managing officers of defendant and to plaintiff that the funds and assets of the company had been misappropriated and dissipated in large part, and the records of the company relative to its assets and to the persons who were members and shareholders, and as to the names of persons who had subscribed for shares, were so wanting and indefinite as to require long and tedious investigation of its affairs in order to determine the rights of persons entitled to and claiming shares, and to determine claims made against the company, and that said investigations continued of necessity until in March, 1905, all of which was well known to the plaintiff. That prior to March 11, 1905, no register of members of the company had been made, nor had there been made any allotment of shares, but that on that date shares were issued and allotted to the members of the company, and a register made as required by the memorandum and articles of association of the company, a copy of which is attached; that the companies act of the province of British Columbia requires that every company keep a register of its members, in which shall be entered names, addresses, the amount of the holdings, etc. (3) It is denied that plaintiff became entitled to shares of defendant company for services rendered in the number of eight thousand, one hundred and fifty shares, or any other number, and had no right or interest in any other share of

defendant company until on or about April 27, 1905; that on or about the said day the claim of plaintiff for shares for alleged services theretofore rendered was granted, and shares allotted and allowed to him in the number of eight thousand, one hundred and fifty, which shares were then duly placed to the credit of plaintiff in the register of members of said defendant company, and which said designated shares have ever since said time and do now appear on said register of members in the name of plaintiff; that plaintiff has ever since said time continuously been the owner of same and entitled to all the rights and privileges relative thereto, the same as other shareholders of defendant company; that during said time plaintiff has been entitled to the direction and control of said shares, which he has during said time exercised. (4) In addition to a general denial, it is denied that any demand had ever been made upon it by plaintiff for the issuance to him of shares of stock. The writing of the letters set out in the petition is admitted, but it is denied that the same constitute a demand such as to entitle plaintiff to maintain this suit. (5) It is denied that after shares were granted and allotted to plaintiff, and his rights thereto determined and the same credited to him on its register of members, as provided in its articles of association, plaintiff demanded same, or that any such demand therefor was refused by defendant, and defendant denies that plaintiff is entitled to damages by reason of the alleged demand and refusal, or to the relief demanded in his petition. (6) It is admitted that the first certificates issued to plaintiff contained an indorsement as alleged in the petition, but the fact is alleged to be that the said indorsement was erroneous, and made by mistake, and that, within a reasonable time after being notified of the erroneous indorsement, other stock was issued to plaintiff as in another paragraph of the answer stated. (7) Defendant further states that on or about the 10th day of February, 1906, certificates for the said eight thousand, one hundred and fifty shares were duly issued by defendant com-

pany and tendered to plaintiff; that it still is ready and willing to deliver said certificates, as provided in its articles of association, to plaintiff, and hereby makes the offer thereof and tenders the same in court.

On motion of plaintiff the second, fourth, and sixth matters of defense pleaded were stricken out. In response to a motion for more specific statement, defendant further answered, pleading that the indorsement appearing in typewriting on the first certificates when issued was discovered to be a mistake about October 4, 1905, and that other certificates for said eight thousand, one hundred and fifty shares were issued on or about February 10, 1906.

Plaintiff filed a reply in which he pleaded that subsequent to the organization of the defendant company, and with full knowledge, it ratified the acts of Bliss, and received and made use of the proceeds of plaintiff's labor, and retained the same, and is now estopped, etc.

I. Defendant complains of the striking out of its answer the several divisions thereof designated in the foregoing statement. We think there was no error in so far as the second division is concerned. It will be observed that the allegation of the petition is of services rendered the company; there was no intimation until the filing of the reply that the services were rendered in connection with the promotion of the company and before its organization. And on no assumption could the fact that, after the service was rendered, the company found itself involved in internal difficulties and dissensions, be made the groundwork of a defense to plaintiff's claim; it being otherwise liable. Moreover, it is no part of the allegation that there was any difficulty respecting the stock claimed to have been sold by plaintiff. And, if the allegation were otherwise, confessedly the tangle had been straightened out long before December 28, 1905, the date on which this action was commenced.

The fourth division of the answer should not have been

1. CORPORATIONS: issuance of stock: action for value: pleadings.

stricken out.   One of the letters written to plaintiff — being
one of those set out in the petition — bearing date May 19,

**2. Same: delivery of stock: action for value.** 1905, advised him that his claim for stock had been allowed.   It was no part of the duty of defendant's officers to carry the stock to plain-
tiff and place it in his hands.   And if, after the allowance
and notice, plaintiff did not present himself and request the
issuance and delivery of the stock, he should not be per-
mitted in an action of this character to recover of defendant
a money judgment based upon the market value of the stock,
and this would seem to be true on plainest principles.

The sixth division of the answer should not have been
stricken out.   It should be borne in mind that what we have
designated as " divisions " of the answers are not in form

**3. Same: tender after suit.** pleaded as separate counts, so that fairly enough, in determining what force and effect
should be given one matter alleged, we may take into con-
sideration all the other matters pleaded in the answer.   Pro-
ceeding on this theory, we have as the substance of the answer
that, while denying the authority of Bliss to bind the com-
pany by contract, still the claim of plaintiff for stock in pay-
ment for services was given recognition by the company in
April, 1905, and an allotment of the number of shares
claimed was made and credited to him on the books of the
company; that no demand was ever made by plaintiff for
the issuance of such stock shares.   There is then the allega-
tion particularly under consideration, and designated by us
as " division 6," and the effect thereof is to aver that, not-
withstanding no demand had ever been made, defendant
had issued the stock to which plaintiff is entitled, and had
made tender thereof to plaintiff, and that it now brings the
stock into court for his use and benefit.   It may not have
been necessary in strictness to have pleaded this, as plaintiff
could not in any event convert his claim into a money de-
mand except upon a request for the issuance of the stock,
followed by a refusal on the part of the company to issue.

But, if for no other reason, defendant might with propriety plead its tender after suit brought, on the theory that such tender amounted to an offer to waive demand for the issuance of the stock, and as evidencing the willingness of defendant to make delivery in the interests of peace and to avoid any further controversy.   In this connection, we do not overlook the fact that the answer makes admission of the writing of the letters, copies of which are set out in the petition. But we think that such letters taken by themselves do not amount to a showing of demand and refusal.   And on this point more will be said presently.   In support of the ruling of the court, counsel for appellee relies upon *Dooley v. Gladiator Co.,* 134 Iowa, 468.   But there a demand and refusal before suit brought was established, and the case is not therefore in point.

II.   Several rulings on evidence are complained of, and of these we shall notice only such as are likely to occur upon a retrial of the case.   Plaintiff was the initial witness called on the trial, and he testified that his contract with Bliss and all services performed by him thereunder was before the organization of the defendant company.   Being asked to state the details of his employment, the defendant objected because authority in Bliss to bind the corporation thereafter to be formed was not shown.   The objection was overruled, and properly so, as we think, in view of the attitude assumed by defendant in answer, and the matter of ratification pleaded in the reply.

4. SAME: evidence.

Plaintiff offered evidence respecting the value of the company's stock during the period from May to August, 1904, and the objection of defendant thereto was overruled. This was error.   As we shall see presently, there had been no demand for the issuance of stock, and a refusal, at any time during the period involved in the inquiry.

5. SAME: evidence of value.

Defendant's offer to put in evidence its articles of association was rejected, and, as plaintiff was insisting in

evidence that the Bliss agreement had been ratified, we think

**6. SAME: evidence of ratification.** the ruling was erroneous. The articles were the instrument by which the issue of stock was to be controlled, and by whom and under what circumstances. Moreover, it is contended, and may well be assumed, that in such instrument the official agents of the corporation having authority to act for it, and through whom it might be made liable, is fixed and determined. As plaintiff was relying upon ratification, it was of the utmost importance to know where lay the authority to ratify, and in what way ratification might lawfully be accomplished. And it appearing from the articles that the governing body of the corporation was a board of directors, the minutes of the proceedings of such board — which were also ruled out on offer — would become competent as evidence as bearing on the question of ratification, and the time and conditions thereof.

III. At the close of all the evidence the defendant moved for a directed verdict in its favor. The motion was overruled, whereupon plaintiff moved for a directed verdict

**7. APPEAL: scope of review.** in his favor, and this was sustained. Counsel for plaintiff contends that, such being the situation, "this court on appeal is limited in reviewing the action of the trial court to the consideration of the correctness of the finding on the law, if there is any evidence to support the finding." The position so taken is in conflict with the rule of our cases, *Bank v. Bates, etc., Co.,* 111 Iowa, 432; *Walker v. Fruit Co.,* 113 Iowa, 428. Counsel has not overlooked these cases, but insists that we should depart from them in view of the weight of authority obtaining elsewhere on the subject. It is true that the rule is different in many jurisdictions, but in our view the ends of justice will in general be subserved by adhering to the rule we have entered upon.

IV. Considering the issue in the light of the evidence permitted to go into the record, the motion to direct a verdict

for plaintiff should not have been sustained.  We do not find it necessary to rehearse the evidence in detail.  Suffice it to say that, aside from the admission of the answer that stock was allotted to plaintiff, the record contains nothing which could be stretched into proof of ratification of the Bliss contract. And that proof of ratification is essential to a right of recovery by plaintiff is not made the subject of question, as it could not well be.  It is true that plaintiff testifies that shortly after the organization of the company, in conversation with some of the individual directors, he made known to them the fact of his contract with Bliss.  He mentions two of such directors by name — Mr. Calvin, who was also president, and Mr. Crissman.  His talk with Mr. Calvin was immediately following the organization and before the party had returned from British Columbia.  He says he told Calvin the terms of the contract, to which the latter replied " that he thought that was very reasonable, and that they had paid more than that to some agents."  The conversation with Mr. Crissman was in August, 1904, and plaintiff says: "I asked him if my account was all right, and he acknowledged that it was; and he went on to say that I had sold stock for fifteen cents, which was better than any one else had done, and everything was straight on the books, or papers — whatever it might be — as far as I was concerned." Without naming them, plaintiff says that he talked with other members of the board, and that they conceded that his work had been legitimate and that he should have his pay.  It is not pretended by plaintiff that he ever presented his claim in person to the board of directors, and, as far as appears, he addressed no communication to that body until March 14, 1905.  On March 6th he wrote G. T. Hedges, then secretary of the company, saying:  " I would like to know how you are getting along with the Hawkeye Co.'s affairs.  And when my certificate will be issued?"  This letter was answered by W. L. Crissman as follows:  " Yours

*8. CORPORATIONS: contract of agent: ratification: evidence.*

to Mr. Hedges has been referred to me for reply. . . . You should either send a sworn statement of your claim or present the same in person before the board of directors. You cannot expect the board to allow commission claims until proven." Plaintiff answered on March 14th, by mailing to Hedges a statement as follows: " To the board of directors of the H. G. M. Co. of B. C. Gentlemen: To the best of my belief I am entitled to nine thousand, seven hundred sixty shares paid up stock in the above Co. For work rendered selling shares." If this communication was ever laid before the board, or considered by it, the fact is not disclosed by the record before us.

But it is said in the course of argument that the defendant took the benefits of plaintiff's services, and retains the same, and that from this ratification must be implied. On this subject plaintiff testifies that in making sales of stock he simply took advance subscriptions on blanks furnished by Bliss, and collected a percentage of the proposed face value of the stock in money. " Q. This money these parties paid in, state whether that was covered into the treasury or the hands of the officers of the company? A. Yes, sir; it was paid to Bliss. Information of this fact was conveyed to the board of directors." And continuing in the same connection he testifies: "I cannot say that I informed the president of the fact that I had sold this stock and made these collections on behalf of the company; I cannot now remember. Q. Were the members of the board informed of the fact that you had made these sales and money had been paid in on these subscriptions? A. I would say positively that some of them knew it at least. Q. Now, have you any knowledge of whether or not any of the stock was ever issued by the company to these men you sold to? A. It was." This comprises the evidence on the subject. Assuming, now, for the purposes of this case, that the company after organization could ratify and adopt a contract as made by Bliss, and assuming that rati-

fication may be implied from an acceptance and retention of the proceeds or benefits of such a contract, still two things in addition to the fact that the benefits of the contract came into the hands of the company are essential to be proven—the ratification must be by the officer or governing body having authority to make or to enter into such a contract, and the ratification must be upon full knowledge. *Tracy v. Society,* 47 Iowa, 27; 21 Am. & Eng. Ency 853. Clearly the record is wanting in proof of these things. The best that can be said is that some of the individual members of the board — how many, and whether a majority, cannot be told — knew that, under an arrangement with Bliss, plaintiff had secured advance subscriptions for stock, and in connection therewith had collected advance payments; that to some at least of such subscribers stock was afterwards issued by the company. There is no direct evidence respecting the disposition of the money paid to Bliss. As the articles of association were ruled out, it cannot be told with certainty where lies the authority to contract, and hence the power to ratify; but assuming what is probable, that authority was with the board, we have no evidence of any action on the part of that body. Nor is there any evidence of acceptance with knowledge — by direct action or by acquiescence — on the part of the board of the benefits of plaintiff's services. Bliss did not, as far as appears, report his contract to the board; plaintiff confessedly did not attempt communication with the board until in March, 1905, and there is nothing on or about the subscription papers which were introduced in evidence to indicate that plaintiff had any connection therewith. The knowledge incidentally acquired by one or more directors, less than a majority—and we are bound to assume this, as plaintiff has not sustained the burden of proving otherwise—was not the knowledge of the board, and that a director had knowledge could not bind the board or the company as by acquiescence.

Recurring now to the subject of demand, and confining

our attention to begin with to the time preceding the first issuance of stock to plaintiff—which was some time in

**9. ISSUANCE OF STOCK: demand: action for value.** April, 1905,— plaintiff testifies that he orally requested of Bliss, of Calvin, and of Crissman that the stock due under his contract be issued to him. He also relies upon the letters written by him, copies of which are set out in the petition. No weight can be attached to such oral requests. At the time thereof, plaintiff had no right or claim against the company which could be the subject of a demand. Whatever right he became entitled to arose for the first time with the subsequent allotment of shares to him, as conceded in the answer. Moreover, there is nothing in the record to indicate that either of the persons of whom request was made had authority to act in the premises. In such cases as this a demand must be made upon the officer or governing body authorized to act in the premises. Who was such officer or body, the record affords us no information. We shall not set out the letters pleaded. They are not capable of being construed into a demand, but, if they were, what has been said upon the subject of the oral requests would have equal application thereto. Now, was there a demand and refusal after an allotment of stock had been made to plaintiff? This is the evidence bearing on the subject: On April 22, 1905, plaintiff wrote to Hedges, secretary, asking why his stock was not issued, and requesting attention to the matter. Hedges answered saying: "If you will advise me how many shares of commission stock you are entitled to I will have certificates issued to you." To this plaintiff replied of date April 25th, saying, "I am entitled to nine thousand, seven hundred sixty shares." On May 16, 1905, plaintiff again wrote Hedges making inquiry about the stock, and reiterating his claim for nine thousand, seven hundred sixty shares, and requesting the issue to be in certificates of two thousand shares each. Hedges answered that shares to the number of eight thousand, one hundred fifty had been mailed to

plaintiff April 30th, and saying, "I was instructed to issue only eight thousand, one hundred fifty shares instead of nine thousand, seven hundred sixty as claimed by you." This was followed by some correspondence in an effort to locate the stock, and on September 2, 1905, plaintiff addressed a letter to Hedges, saying, " I think I ought to have the certificates by this time, can't you make out a new set and send them to me ? "   The answer to this letter suggested that a letter be written to the president of the company, and it was further said:   " If after hearing from him you do not find the certificates you had better make showing for new certificates.   Sections 12 and 13 of the articles show under what circumstances and by whom new certificates in lieu of lost certificates may be authorized and issued."   Plaintiff wrote the president, and the stock was located in his hands.   It was at once forwarded with the excuse that " I did not know your address.   A letter addressed to you was returned, and I have been expecting to hear from you."   As we have seen, plaintiff returned the stock, simply saying that the certificates did not " fill the bill."   In this situation plaintiff commenced his action.

It has been held that a demand made by letter is not sufficient to support an action for conversion.   *Pattee v. Gilmore,* 18 N. H. 460, (45 Am. Dec. 385).   And, in reason, this would seem to be sound doctrine, because it is universally held that a demandant may not require the party in possession — without wrong in the first instance — to perform any other act than that of making manual delivery when called upon for such purpose.   A demand which requires the person upon whom made to transport or carry the thing which is the subject of the demand to the demandant is not sufficient.   28 Am. & Eng. Ency, 707, and cases in note.

But if the rule were otherwise, and conceding that the letters of plaintiff in the language thereof may fairly be construed into a demand, still we think it cannot be said

from the record as matter of law that there was a refusal.

10. SAME: refusal to issue stock. Issue of eight thousand, one hundred fifty share — all that plaintiff is now insisting that he was entitled to — was promptly made. The delay in transmission cannot be construed into a refusal, nor can the subsequent letters written on behalf of the company. The situation then comes down to this: If refusal there was, it arose out of the delay which followed the return of the certificates and the discovery of the error therein. Conceding that a delay may under some circumstances amount to a refusal, still it must be unreasonable, and here would arise a jury question.

Concluding, as we do, that the verdict in favor of plaintiff should not have been directed, the judgment must be, and it is, *reversed*.