UNITED STATES FIDELITY & GUARANTY COMPANY OF BALTIMORE v. CITIZENS STATE BANK OF ANTELOPE.[1]

December 12, 1924.

No. 24,204.

**Stipulated facts should have been included in findings.**

1. Defendant was entitled to have certain stipulated material facts incorporated in the findings.

**No conversion of company's funds by defendant paying its cashier's check.**

2. Where a grain buying corporation's manager, whose honesty and fidelity plaintiff had insured, without authority drew a draft in the name of the corporation and fraudulently procured a bill of lading from a common carrier purporting to cover a full car of wheat, naming the corporation consignor and the drawee in the draft consignee, but which car was empty, and the defendant bank in good faith exchanged its cashier's check payable to the order of the corporation for the draft with the bill of lading attached, the corporation obtained no title to the check and its payment by defendant to a holder

[1]Reported in 201 N. W. 431.

to whom the manager had negotiated it was not a conversion of the corporation's funds.

### Reimbursement, with knowledge of facts, was act of volunteer.

3. Reimbursing the drawee of the draft, after defendant had paid its cashier's check and with full knowledge of the facts, was the act of a mere volunteer or intermeddler giving no right of subrogation.

### Subrogation not warranted by the facts.

4. The facts do not justify the application of the doctrine of subrogation to the corporation or to plaintiff, the insurer of the honesty of the corporation manager, even if the drawee could assert a cause of action against defendant.

Action in the district court for Hennepin county to recover $2,500. The answer alleged defendant accepted the draft and bill of lading in good faith, believing the car contained wheat as stated in the bill of lading and was worth at least $2,500; that the draft and bill of lading were fraudulent and worthless; that its cashier's check was obtained by fraudulent representations of the shipping company's agent and manager; that, without knowledge of these facts, defendant indorsed the draft and transmitted it and the bill of lading for collection and it was paid in due course of business, and that its cashier's check was indorsed, presented for payment to defendant and paid in due course. It also alleged that, if Hagen appropriated the cashier's check to his own use, he did so after it had been delivered by defendant to the shipping company and had been received as its property and after defendant had made itself unconditionally liable for its payment, and any loss to the shipping company was due to its own negligence and to the act of its own authorized agent.

The case was tried before Montgomery, J., who ordered judgment for the amount demanded. From the judgment, defendant appealed. Reversed with directions.

*Shearer, Byard & Trogner,* for appellant.

*L. K. Eaton,* for respondent.

HOLT, J.

On and prior to January 12, 1918, Wyman Hagen was the manager of the Farmers Grain & Shipping Company, hereinafter called the shipping company, operating a grain elevator at Antelope, Montana. He was bonded by plaintiff to faithfully discharge the duties of his employment. The financial backer of the shipping company was Winter-Truesdell-Ames Company, a grain commission firm of Minneapolis, herein referred to as the Ames Company. The defendant, a bank at Antelope, cashed checks drawn by Hagen for the purchase of grain and drew drafts upon the Ames Company for the amounts so paid out. On said twelfth of January, Hagen drew a draft of $2,500 on Woodward-Newhouse Company of Minneapolis, signed in behalf of the shipping company by himself as manager, attached the same to a straight bill of lading issued by the Great Northern Railway Company covering a certain car stated to contain 91,450 pounds of wheat, wherein the shipping company was the consignor and the Woodward-Newhouse Company the consignee, and then went to defendant and requested it to issue therefor a cashier's check for $2,500 payable to the order of the shipping company. Hagen had no authority to draw on the Woodward-Newhouse Company and had fraudulently obtained the bill of lading which covered an empty car. The same day Hagen negotiated the cashier's check at the Sheridan County State Bank, located at Plentywood, Montana, receiving about $2,000, the balance paying his personal debt to that bank. Woodward-Newhouse Company paid the draft on January 15. Hagen had no authority to draw drafts or sell or indorse negotiable instruments of his employer.

Three days later defendant was informed that the bill of lading covered an empty car, and that Hagen had acted fraudulently and without authority. The Sheridan County Bank pressed defendant for payment of the cashier's check, but the shipping company notified it on January 18 not to pay the same to any other party than its treasurer. A request that the shipping company protect defendant against the holder of the check by a bond was declined, and thereafter defendant paid the Sheridan County Bank on February 6, but without knowledge that said bank in negotiating the check

had been paid a personal debt of about $500 due it from Hagen. On February 18, with knowledge that defendant had paid the cashier's check, the Ames Company paid for the account of the shipping company $2,500 to the Woodward-Newhouse Company, the amount the latter had paid upon the draft drawn by Hagen, as stated, and attached to the bill of lading covering an empty car. When defendant issued its cashier's check in exchange for the draft of $2,500 with the bill of lading attached, it had no knowledge that the bill of lading had been fraudulently procured, or that the car it covered was empty, and took the draft and bill of lading in good faith believing the same were valid and genuine. Likewise the Woodward-Newhouse Company paid the draft in good faith not knowing that the bill of lading covered an empty car. Plaintiff reimbursed the Ames Company in behalf of the shipping company on April 1, and thereafter the latter assigned to plaintiff its claim and cause of action against defendant. The complaint is based on the theory that the cashier's check of $2,500 was issued to the shipping company for value and belonged to it; and that defendant converted the same, when, after being notified that Hagen had no authority to dispose of it, it paid the holder, the Sheridan State Bank. The trial court apparently adopted this view and gave plaintiff judgment. Defendant moved for amended findings. The motion was denied. Judgment was entered from which defendant appeals.

The motion for amended findings should have been granted in certain material respects. The stipulated facts included this: "That the defendant bank took said draft of twenty-five hundred ($2,500.00) dollars and said bill of lading in good faith, believing that the same were valid and genuine and not knowing that said draft and bill of lading were fraudulent and that said car was empty." We deem this an important fact and defendant was entitled to have it incorporated in the findings as requested.

The court was also asked to strike out this finding: That "thereafter on April 1st, 1918, the plaintiff pursuant to the bond given by it to said Farmers Grain & Shipping Company, paid for said company said sum of $2,500.00 to said Winter-Truesdell-Ames Com-

pany," and insert in lieu thereof the fact stipulated in that respect, viz.: "That on April 1st, 1918, the plaintiff, with knowledge of the foregoing facts paid to said Winter-Truesdell-Ames Company for said Farmers Grain & Shipping Company the said sum of twenty-five hundred ($2,500.00) dollars." The importance of such a finding is apparent because the foregoing facts referred to included not only knowledge of every step of Hagen's wrongdoing and unauthorized acts, but also the fact stipulated that defendant had no knowledge and was not informed that Hagen owed the Sheridan State Bank $500. And there is no evidence that it acquired such knowledge prior to February 6 when it honored its cashier's check, payment of which had been repeatedly demanded by the Sheridan Bank, and against which the shipping company refused to protect defendant. So that defendant then supposed the Sheridan State Bank to be a holder in due course, and knew nothing to the contrary.

Complaint is also made of the refusal of the court to find the facts stipulated as to the liability of the carrier on the fraudulent bill of lading to the holders thereof, and their neglect seasonably to assert such claim. Since we conclude the appeal may be determined without considering this defense, the failure to find the facts in respect thereto is harmless.

Plaintiff's theory of its cause of action is that the cashier's check belonged to the shipping company, that it had been negotiated to the Sheridan State Bank by the unauthorized indorsement of Hagen, and when defendant was notified thereof it could not pay it. The difficulty with this theory is that defendant received nothing of value from the shipping company for the cashier's check. The draft given in exchange therefor was also drawn without authority and the bill of lading attached to give it value was utterly fraudulent and worthless. It may be claimed that the shipping company might ratify the act of Hagen in issuing the draft and attached bill of lading, and repudiate his negotiation of the cashier's check. We think this course not open to the shipping company. If it desires to ratify Hagen's drawing of the draft, it must adopt all of his acts in connection therewith and make its own the fraud committed

against defendant by means of the false bill of lading attached to the draft. One guilty of a fraud whereby another is placed in a position of risk and detriment cannot invoke the equitable rule of subrogation to saddle the loss upon the one so placed in jeopardy. Here when the fraud was discovered and the holder of the cashier's check issued by defendant was pressing for its payment, the shipping company declined to protect against suit or loss. Nor did the shipping company notify defendant that it intended to ratify Hagen's acts in respect to the drawing of the draft or procuring the attached fraudulent bill of lading. In fact nothing was done in that direction until 12 days after defendant had paid its check. This is quite different from the case of Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. 566, where the money loaned on a mortgage was used to pay prior mortgages in ignorance of another mortgage given before plaintiff's, and it was held that, the money being loaned to take up such prior mortgages, plaintiff could be subrogated and have them reinstated. They were paid in ignorance of the situation. Not so here, plaintiff and the shipping company knew all the facts when the payments were made under which subrogation is claimed.

Not until the shipping company adopted or ratified the unauthorized acts of Hagen in the transaction whereby Woodward-Newhouse Company parted with its money, could the latter have any legal claim against the former, for the stipulation and finding is that Hagen issued the draft without authority. His employment as manager conferred no authority to draw or execute negotiable instruments. Such is the law in Montana where the draft was issued. Helena Nat. Bank v. Rocky Mountain Tel. Co. 20 Mont. 379, 51 Pac. 829, 63 Am. St. 628. The shipping company was therefore not liable to Woodward-Newhouse Company, and its arrangement to reimburse that company with knowledge that defendant had paid the cashier's check to the holder thereof must be construed as a voluntary payment by one under no legal obligation to do so. Neither could Woodward-Newhouse Company have recovered from defendant after defendant in good faith had incurred liability on its cashier's check under such authorities as Bern-

heimer v. Marshall, 2 Minn. 61 (78) 72 Am. Dec. 89; Germania Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 Am. St. 519; Pennington County Bank v. First State Bank, 110 Minn. 263, 125 N. W. 119, 26 L. R. A. (N. S.) 849, 136 Am. St. 496, for there cannot be any substantial difference between a drawer paying a forged draft or a draft drawn without authority. Hence, by stepping in and paying Woodward-Newhouse Company, plaintiff or its assignor, the shipping company, acquired no cause of action against defendant. But, even granting Woodward-Newhouse Company had a cause of action against defendant, it could not also have one against the shipping company on the same claim. Then the latter must be considered a mere volunteer and incapable of invoking the right of subrogation. It is made still more apparent that the shipping company and plaintiff, its successor in interest, has no claim of subrogation through Woodward-Newhouse Company, for the latter was paid by the Ames Company, which, from the record, appears not to have had the slightest interest in Hagen's doings either legally or morally. To be sure, the Ames Company paid for the shipping company, but the record is silent as to its being paid under any pre-existing contract or agreement.

The facts viewed from another angle do not place plaintiff or its assignor in a favorable position to invoke the equitable principle of subrogation. The servant and agent of the shipping company, whose honesty plaintiff insured, committed the fraud which has resulted in a loss to some one. The principal and master and the insurer should not readily be permitted to place this loss upon one who acted in good faith and who in vain called upon the former for protection when one claiming to be a holder in due course of the cashier's check threatened suit and other coercive measures to enforce payment.

The judgment is reversed and cause remanded with direction to amend the findings of fact and conclusions of law in conformity with this opinion and that judgment be entered in favor of defendant.