[Civ. No. 8540. First Appellate District, Division One.—August 10, 1932.]

EDWARD LOWE, Jr., Appellant, v. FRANCIS C. COPELAND et al., Respondents.

316

M. Mitchell Bourquin for Appellant.

Jos. T. O'Connor, Hartley F. Peart, Charles V. Barfield and Thomas F. McCue for Respondents.

THE COURT.—This action was one for equitable relief, namely, a decree declaring the plaintiff to be the owner of certain shares of stock in defendant American Metal Products Corporation, and enjoining defendants Copeland and the Cig-a-Lite Corporation from transferring certain patent rights. In the alternative damages were prayed, and plaintiff asked that a receiver of the business and property of defendant American Metal Products Corporation be appointed.

Defendant Copeland was the inventor of various cigar and cigarette-lighting devices, and the holder of certain patents and applications for patents for such devices. He organized defendant Cig-a-Lite Corporation, in which he owned a majority of the stock. On or about March 25, 1927, plaintiff entered into a contract with Copeland and the corporation last named, by which the latter two agreed to transfer the patent rights to said devices to a corporation to be organized under the laws of Nevada, in which Copeland should own fifty-one per cent of the stock, and act as its president at a salary of $500 per month. In consideration of the issuance to him of forty-four per cent of the stock of the Nevada corporation plaintiff agreed to advance to this company in cash from time to time as needed sums not to exceed $44,000. This promise was to be evidenced by plaintiff's note and considered as his subscription for the stock mentioned. It was also agreed that no contract involving more than $500 should be entered into by the Nevada corporation without the approval of defendant Copeland; further, that the transfers of the patent rights to the company were to be subject to the condition that it should manufacture and sell at least 5,000 of the devices during each calendar year, and that if it failed to do so then upon demand the said

patent rights should be reassigned. The Nevada corporation was organized and the patent rights assigned to it.

The complaint alleged that plaintiff executed and paid said promissory note, and in accordance with said contract became the owner of said stock, which had not been issued to him, although demand therefor had been made; further, that good and reasonable offers were made to the Nevada corporation for the manufacture and sale of said devices, but that defendant Copeland without good cause refused to approve the same, and thus obstructed and prevented the manufacture and sale of said devices by the Nevada corporation; that as a result this company failed to manufacture and sell the number of said devices agreed upon within the time fixed in the contract, following which Copeland and the Cig-a-Lite corporation gave notice on that ground of their election to terminate the contract, and demanded a reassignment of the patent rights. The complaint contained further allegations that Copeland by virtue of his majority interest in the stock of the Nevada company controlled the action of its board of directors; also that, by virtue of such control he caused said directors to adopt a resolution directing the company's officers to execute such assignments. Plaintiff prayed that he be declared the owner of the stock mentioned, and that Copeland and the Cig-a-Lite corporation be restrained from reassigning the patent rights; that the Nevada corporation be relieved from the condition in said contract, and that a receiver of its business be appointed.

The trial court found that plaintiff executed and paid the note and was the owner of the stock as alleged; that the same had not been issued but that no demand for its issuance had been made; further, that the Nevada corporation had never during any calendar year manufactured or sold, or caused to be manufactured or sold, 5,000 of said devices; that Copeland in the exercise of his discretion had rejected the offers mentioned, stating his reasons therefor, and that the offers made through plaintiff, while not unreasonable, presented a question upon which reasonable minds might differ and upon which plaintiff and Copeland did differ. The same finding was made respecting offers made to the company through Copeland, and also that none of the rejections by him were made in bad faith or arbi-

trarily but in good faith and in the exercise of his business judgment; further, that he had not waived any of his rights under the agreement.

The complaint alleged in paragraph 15 that on September 27, 1929, at a meeting of the stockholders of the Nevada corporation Copeland, by force of his majority ownership in the stock and over plaintiff's vote and protest, caused the adoption of a resolution confessing without cause the failure, default and inability of the company to perform the contract, and authorizing its officers and directors to reassign the rights acquired thereunder, and that Copeland, unless enjoined, will execute such reassignments. The court found the allegations of this paragraph to be true. In this connection, however, it was found that by reason of the other findings, and the inability of the plaintiff and Copeland to agree upon any settled policy for the company or upon any contract submitted by either to the other, and that, due to the fact that Copeland and the Cig-a-Lite Corporation owned a majority of the stock in the Nevada corporation, and consequently controlled its board of directors, and to the attitude of its finance committee—which the court found was antagonistic to Copeland—it was impossible for the Nevada company to perform the contract or to manufacture or cause to be manufactured 5,000 of the devices in any one year.

The court concluded that the patent applications and rights assigned to the company were subject to reassignment to Copeland; and that notwithstanding the condition of the company's affairs as found no receiver should be appointed, as there were no funds in its treasury, no business in prospect, and, no assessments being permitted under its articles of incorporation and by-laws, there was no means of raising money to continue its business. The court also concluded that the Nevada corporation was not entitled to be relieved from the condition in the contract and that no injunction should issue, and entered judgment denying the relief prayed for in the complaint.

Plaintiff claims that portions of certain findings are unsupported and that the findings do not support the judgment; while defendants contend that no cause of action was alleged in the complaint or proved.

We are satisfied that there was sufficient evidence to support the finding that the defendant Copeland, in rejecting

the offers mentioned, did not act arbitrarily or in bad faith. Fairness in business transactions is presumed (Code Civ. Proc., sec. 1963, subd. 19), and the question being one of fact, provable both by direct and circumstantial evidence, and there being evidence in the record which the trial court believed reasonably sufficient to support its conclusion, its finding on this issue cannot be disturbed (*Rossen* v. *Villanueva*, 175 Cal. 632 [166 Pac. 1004]; 6 Cor. Jur. 880). This is true even though an appellate court might be of opinion that a different conclusion should have been reached (*Clopton* v. *Clopton*, 162 Cal. 27 [121 Pac. 720]).

That title to the patents and patent rights mentioned passed by assignment to the Nevada corporation subject to a condition subsequent is plain from the provisions of the contract. (*Waterman* v. *MacKenzie*, 138 U. S. 252 [34 L. Ed. 923, 11 Sup. Ct. Rep. 334]), and in such cases the title remains in the assignee until the forfeiture is enforced (48 Cor. Jur., Patents, sec. 397, p. 257). A condition subsequent refers to a future event upon the happening of which the obligation becomes no longer binding on the party in whose favor the condition was created if he chooses to enforce it (Civ. Code, sec. 1438).

While the intent to create a condition subsequent must appear expressly or by clear implication no precise words are necessary (*Firth* v. *Los Angeles Pacific etc. Co.*, 28 Cal. App. 399 [152 Pac. 935]; *Firth* v. *Marovich*, 160 Cal. 257 [Ann. Cas. 1912D, 1190, 116 Pac. 729]), and the plain letter of an agreement cannot be disregarded (13 Cor. Jur., Contracts, sec. 533, p. 567).

Forfeitures under such provisions, however, are not favored; and any inconsistent acts or dealings by the party claiming the forfeiture will be regarded as a waiver (*Haserot* v. *Keller*, 67 Cal. App. 659 [228 Pac. 383]). In the case cited the waiver found rested upon the principles underlying estoppel, namely, that the acts of the party claiming the forfeiture had induced a detrimental change of position (*McCormick* v. *Orient Ins. Co.*, 86 Cal. 260, 262 [24 Pac. 1003]). Here the contract was entered into on March 25, 1927, and a demand for the reassignment of the patents was made in June, 1929. Plaintiff admits that Copeland had the right to demand such assignment in March, 1928. He failed, however, to do so, and plaintiff thereafter paid the company

pursuant to his contract approximately $22,000, this money being used in its business. It is contended that having allowed the above period to elapse without exercising his right to demand a reassignment, and having thus encouraged plaintiff to make the payments mentioned, Copeland waived the right to enforce the condition.

Had the company, notwithstanding it failed to manufacture and sell the required number of devices the first year, performed the contract in that respect during the second year, no advantage could have been taken thereafter of the fact of nonperformance during the first year; but in view of the finding in substance that Copeland acted in good faith in his dealings with plaintiff and the company we cannot say that his failure to demand a reassignment at the end of the first year was due to anything but the expectation that the company would perform during the following year; and this notwithstanding the company directly, and Copeland indirectly, received the benefit of the payments made by plaintiff during the second year. ■ Unless but one inference can be drawn from the evidence, waiver and estoppel are questions for the jury or the trial court (27 R. C. L., Waiver, p. 912; *Kerr* v. *Reed,* 187 Cal. 409 [202 Pac. 142]; *Parke* v. *Franciscus,* 194 Cal. 284 [228 Pac. 435]). Here the trial court found that there was no waiver, and we cannot say that the finding is unsupported.

■ There is no merit in the claim that the notice given by Copeland of his election to take advantage of the breach of condition was insufficient in form. However, it is contended that the notice was legally insufficient, as Copeland thereby assumed a position hostile to the interests of the company, which, he being the president, the law would not permit.

■ The president and the directors of a corporation occupy a fiduciary and trust relationship thereto (*Sims* v. *Petaluma Gas-Light Co.,* 131 Cal. 656 [63 Pac. 1011]; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352 [104 Am. St. Rep. 42, 78 Pac. 550]), and they are not permitted to assume a position adverse to the corporation (*Dean* v. *Shingle,* 198 Cal. 652 [46 A. L. R. 1156, 246 Pac. 1049]). Transfers of corporate property by such officers to themselves are voidable (6a Cal. Jur., Corporations, sec. 633; *Phillips* v. *Sanger Lumber Co.,* 130 Cal. 431 [62 Pac. 749]; *Dean* v. *Shingle, supra*);

and a trust arises in favor of the corporation as against an officer as to anything so received (*Lezinsky* v. *Mason Malt etc. Co.,* 185 Cal. 240 [196 Pac. 884]). In the present case, however, the court found in effect that defendant Copeland was entitled to an unconditional reassignment of the patents. Accordingly a duty rested upon the corporation to reassign; and while it may be conceded that Copeland, being president and a director of the company, assumed a position adverse to the company's interest in attempting to procure the reassignment, nevertheless, his right being clear, the trial court properly concluded that no injunction should issue.

It is well settled that before an injunction will issue it must appear that some substantial and positive injury will occur; and that acts, although irregular and unauthorized, which will not have that result constitute no ground for relief (1 High, Injunctions, 4th ed., sec. 9; 32 Cor. Jur., Injunctions, pp. 49, 50; *Duggan* v. *Emporia,* 84 Kan. 429 [Ann. Cas. 1912A, 719, 114 Pac. 235]; *Gilfillan* v. *Grier,* 145 Pa. 317 [22 Atl. 593]; *Robins* v. *Latham,* 134 Mo. 466 [36 S. W. 33]). As held in the case last cited, there must not only be a violation of plaintiff's rights, but such a violation as is or will be attended with substantial damage: not merely a technical injury; and this rule is followed in principle in the following cases: *Modoc Land etc. Co.* v. *Booth,* 102 Cal. 151 [36 Pac. 431]; *Copsey* v. *Sacramento Bank,* 133 Cal. 659 [85 Am. St. Rep. 238, 66 Pac. 7, 204]; *Clough* v. *W. H. Healey Co.,* 53 Cal. App. 397 [200 Pac. 378].

Furthermore, an injunction will not issue merely for the enforcement of a right or the prevention of a wrong in the abstract (14 R. C. L., Injunctions, p. 321; *Goodrich* v. *Moore,* 2 Minn. 61 [72 Am. Dec. 74]), or where it will retard rather than promote justice (*Endicott* v. *Mathis,* 9 N. J. Eq. 110).

It has been held that where, because of dissension in its board of directors, a corporation cannot function, a court has power to appoint a receiver to preserve its property, but in such a case the proceeding is not directed toward closing the affairs of the corporation nor is it one to dissolve it, but merely to place its assets in safe hands, as courts are not authorized before dissolution to appoint a receiver for such purposes (*Elliott* v. *Superior Court,*

168 Cal. 727. [145 Pac. 101]; *Boyle* v. *Superior Court*, 176 Cal. 671 [L. R. A. 1918D, 226, 170 Pac. 1140]). Here there was no allegation or claim that, with the exception of the patent rights, the Nevada company had any assets; nor that if such rights should not be retained it could or would continue in business. There were no funds in the company's treasury, no means of raising funds from its stockholders by assessment or otherwise, and no business in prospect which would bring into its treasury any funds to carry on the business, and, as found, Copeland was entitled to a reassignment of the patent rights. Except where the moving party has some absolute right to the property sought to be controlled the appointment of a receiver rests in the sound discretion of the trial court, and the appointment should not be made where no benefit or advantage is to be gained thereby (53 Cor. Jur., Receivers, sec. 21 p. 36); and in view of the facts we cannot say that the court erred by refusing to do so.

As stated, it is urged by defendants that plaintiff could not maintain the action on his own account, and that no facts were alleged or proved which gave him the right to proceed in the corporation's behalf.

Plaintiff's claim to the stock mentioned gave him the right to sue therefor; and the facts alleged and found show sufficiently that any demand that the corporation bring action to restrain the retransfer of the patent rights would have been unavailing. The company was made a party to the suit, and all the questions above discussed were litigated. The act sought to be restrained, although irregular, was, in view of the facts, one which could cause no substantial injury to the corporation or to plaintiff, and the trial court rightly so decided.

With respect to the finding that the averments of paragraph 15 of the complaint were true, this paragraph contained the allegation that the directors of the Nevada company adopted a resolution confessing *without cause* its failure and inability to perform the contract and directing a reassignment of the patents. It is urged by plaintiff that in view of this finding the relief prayed for should have been granted.

The finding that the acts were done "without cause", if one of fact, might be said to conflict with the findings that

the company had failed to perform and that Copeland acted in good faith. However, we are of the opinion that this was but a legal conclusion (*Fisher* v. *Fisher*, 23 Cal. App. 310 [137 Pac. 1094]), which tendered no issue; and although it is found among the findings of fact it is no less a conclusion of law (*Savings & Loan Society* v. *Burnett*, 106 Cal. 514 [39 Pac. 922]; *Towle* v. *Sweeney*, 2 Cal. App. 29, 32 [83 Pac. 74]; *Lynip* v. *Alturas School Dist.*, 24 Cal. App. 426, 438 [141 Pac. 835]).

Plaintiff asked for a decree declaring him to be the owner of the shares of stock for which he subscribed. It was found that the agreed price had been paid, but that there had been no demand for the issuance of and no refusal to issue, a certificate therefor, and that the defendants had been at all times ready and willing to issue the same to plaintiff.

Such a certificate is only evidence of ownership, which may exist without it (*California Southern Hotel Co.* v. *Callender*, 94 Cal. 120 [28 Am. St. Rep. 99, 29 Pac. 859]; *Majors* v. *Girdner*, 31 Cal. App. 47 [159 Pac. 826]), and it has been held that a demand is necessary to put a corporation in default for failure to deliver certificates of stock where the right thereto has not been denied. (14 Cor. Jur., Corporations, sec. 712, p. 483; Thompson, Corporations, 3d ed., sec. 3518; *Fergus* v. *Venice Investment Co.*, 36 Cal. App. 425 [172 Pac. 396]; *Jefferson County Savings Bank* v. *Compton*, 192 Ala. 16 [68 South. 261]; *Teeple* v. *Hawkeye etc. Co.*, 137 Iowa, 206 [114 N. W. 906]; *Boyd etc. Assn.* v. *Eastham*, 208 Ky. 368 [270 S. W. 12]; *Gallatin etc. Alliance* v. *Flannery*, 59 Mont. 534 [197 Pac. 996]; *Weaver* v. *Consumers' etc. Co.*, 246 Pa. 434 [92 Atl. 553]; *Ophir Investment Co.* v. *Alexander Realty Corp.*, 117 Wash. 637 [201 Pac. 897]; *Lipscomb's Admr.* v. *Condon*, 56 W. Va. 416 [107 Am. St. Rep. 938, 67 L. R. A. 670, 49 South. 392].)

While plaintiff was doubtless entitled in this respect to the decree prayed for, he makes no complaint here that a formal judgment declaring him to be the owner of the stock was not entered.

We have examined the evidence and are satisfied that the findings of the court are fairly supported, and that no sufficient ground for reversing the judgment has been shown.

The judgment is affirmed.