### 1819.   EVANS & PENNINGTON v. NAIL et al.

1. Where a judge physically affixed his signature to the certificate to a bill of exceptions on March 8, and thereafter held the same in his exclusive possession until March 19, without fault on the part of counsel for the plaintiff in error, and published his certificate by delivering the bill of exceptions to counsel for the plaintiff in error, together with a certificate as to the facts, *held*, that the bill of exceptions was in fact certified on the latter day; that the signing of the bill of exceptions consisted of more than the mere physical annexing of the signature.

2. None of the assignments of error require the grant of a new trial.

Action for damages; from city court of Baxley—Judge Thomas. February 11, 1909.

Argued June 10,—Decided December 10, 1909.

*W. W. Bennett,* for plaintiffs in error.   *V. E. Padgett,* contra.

9

RUSSELL, J.　A motion is made to dismiss this writ of error, upon the ground that the bill of exceptions was not served as provided by law, the certificate of the judge being dated March 8, 1909, and the acknowledgment of service having been made more than ten days thereafter, to wit, March 22, 1909; and also because the bill of exceptions was not filed until March 26, 1909, which was more than fifteen days (to wit, eighteen days) after the bill of exceptions was certified.　The usual certificate, signed by the judge of the city court, containing the statement that it was signed March 8, was immediately followed by a note, in these words: "This bill of exceptions was handed me in Brunswick on the 8th instant, and was signed after the same was read and examined.　I did not see W. W. Bennett, counsel for plaintiff in error, after signing same, and put the same in my valise.　I was then on my way to Camden county superior court, and did not think of same any more until the 19th, when inquiry was made by Mr. V. E. Padgett, counsel for defendant in error, about whether a bill of exceptions had been presented. I thereupon went to my valise, being then at Wayne superior court, got the bill of exceptions, and handed same to W. W. Bennett.　The same had been in my possession from the 8th to the 19th.　This March 19th, 1909.　J. H. Thomas, Judge city court of Baxley, but now out of office."

Taking into consideration the broad policy apparent in our recent legislation, which does not favor the dismissal of writs of error upon technical grounds, but rather prefers that writs of error should be determined upon their merits, we are of the opinion that the motion to dismiss should not be sustained.　If we look solely to the certificate, or if nothing else appeared, the motion would of course be well taken; for the bill of exceptions was not served within ten days, nor filed within fifteen days, of the date when the judge attached his signature to the certificate.　In that event the decision upon the motion to dismiss would be controlled by the decisions of the Supreme Court in *Arnold* v. *Hall, 70 Ga.* 445, and *Rich* v. *State, 74 Ga.* 811.　Both of these decisions, however, antedated the several enactments of the legislature to which we have referred above.　Furthermore, it is apparent, from the note which we have copied above, that while the judge physically signed the certificate, there was no publication of this signature to any one until March 19, 1909.　We think that the explanatory note of the judge should

be considered as in pari materia with the date apparently attached to the original certificate; and when this is done, it is apparent that the bill of exceptions was not really certified until March 19. We bear in mind that the judge can not certify a bill of exceptions more than once, and that when he has once certified a bill of exceptions his power is exhausted and his jurisdiction ended. The record in this case, however, presents a different proposition. The real question is, *when* did the judge certify the bill of exceptions? If certification became complete by the mere physical fact of signature, then the present bill of exceptions was certified on the 8th of March; and, not having been served or filed in time, should be dismissed. In such an event, if a judge should physically sign a bill of exceptions because he was at his desk,—intending thereafter to examine the statements contained therein, and, if the contents of the bill of exceptions were found to be in accordance with the truth, to give his mental assent to his previous written signature and return the bill of exceptions to counsel for plaintiff in error, but if it was not correct, to erase his signature and return it to counsel for needful corrections,—and if it should happen that the bill of exceptions so signed should come into the hands of the plaintiff in error before the judge had mentally approved it, it would be beyond his power to examine or correct the statements of fact alleged therein. Clearly, the mere physical act of signing it is not all that is involved in the certificate to a bill of exceptions. There must be also mental assent to the signing; and the delivery of the bill of exceptions is the highest evidence that there is thorough mental concurrence with the physical act. We hold in the present case, in view of the fact that the judge did not return the bill of exceptions and did not think of it after signing the certificate, and especially in view of the fact that there is no time fixed in which a judge is expected to return a bill of exceptions after he has signed it, that the certificate was never really complete until it was handed to counsel for plaintiff in error on the 19th of March, 1909. We confess that this ruling would not be satisfactory if it could be construed as requiring trial judges to return bills of exceptions without placing upon counsel sending them to the judge the duty of using diligence to ascertain what disposition has been made of them. We do not mean to hold that where an attorney mails a bill of exceptions, or sends it by some one to the judge, and does not hear of

it in a reasonable time, his laches would be excused if it transpired
that the judge did not actually receive the bill of exceptions in the
time within which, by law, it should be presented.    But in the
present case there could be no doubt upon that subject.    The judge
certifies that the bill of exceptions was handed to him in time, and
that, after signing it, he put it in his valise and went to Camden
superior court, and it stayed in his valise during Camden court,
and at Wayne court until it was handed to counsel for plaintiff in
error on the 19th of March.    Considering the date of the original
certificate in pari materia with the explanatory note made by the
judge on the 19th of March, it can not be said that this writ of
error was certified so that it was possible to file or serve it until the
19th of March.    All orders and judgments of courts are in the
breast of the court until legally declared and published, and the
effect of the note in the present case is the same as if his honor
Judge Thomas had changed the date of the original certificate
from the 8th to the 19th at the time of its publication.    The cer-
tificate was not in fact signed, in legal contemplation, until the
19th, although there had been a physical tracing, in pen and ink,
of the name of the judge; because the judge had not completed his
mental assent, which was necessary to complete the certificate, until
he thought of delivering it and was ready to deliver it.    In my
judgment personally it would never do to hold that our trial judges
should be continually prodded with letters from anxious counsel for
plaintiffs in error, inquiring whether they had certified, or when
they would certify bills of exceptions which had been delivered to
them.    It is to be presumed that if a trial judge is not absorbed in
other judicial duties, he will either certify a bill of exceptions or
return it for needful corrections as soon as he can pass upon the
truthfulness and materiality of the statements contained in the
bill of exceptions,—so much so that our law provides that if a bill
of exceptions is certified beyond the time provided by law, it is still
presumed, in the absence of proof to the contrary, that it was pre-
sented to the judge within the time provided by law.    And the
plaintiff in error loses nothing by the delay of the judge in fixing
his official signature to the writ of error, if he in fact has presented
the bill of exceptions for signature in time.    In this case we are
asked to hold that the writ of error should be dismissed because the
judge attached his signature to the certificate, and locked the bill

of exceptions up in his valise and kept it there for nearly two weeks, until the expiration of the time for the service (if the mere signing of the certificate be considered all of the certification of the writ of error), although it is apparent from the judge's note that the bill of exceptions was presented in time.    In other words, we are asked to hold that if the judge retains the bill of exceptions for several weeks after having placed his physical signature to the certificate, the writ of error must be dismissed, although it may not be in any sense the fault of the plaintiff in error, and yet, if he holds the bill of exceptions the same length of time, although mentally he may have determined to verify its allegations, but does not write his name, the plaintiff in error loses nothing by the judge's delay.    The whole policy of our law is that the plaintiff in error shall not, on account of the fault or default of any other than himself, be estopped from presenting his petition for review to the courts of last resort; and our ruling is in accord with this principle. What we rule is not in conflict with prior decisions where the question involved was the truthfulness of material allegations in a bill of exceptions, or whether the trial judge had power to grant a certain writ of error.    The question here is, *when* was the bill of exceptions really certified?    And is a bill of exceptions certified, in contemplation of law, merely because the judge has physically written his name to the certificate?    To the latter question we are constrained to answer that the writing is not essentially the certification of a bill of exceptions; it is only evidence of the mental assent which verifies the bill of exceptions and creates a writ of error. When there appears, along with the evidence of the signature, evidence that there was not readiness on the part of the judge to give publication to the signature, it can not be said that there is that completeness of both mental assent and physical action which is necessary to give birth to a writ of error.    The motion to dismiss the writ is denied.

2.    There are several assignments of error in the bill of exceptions which were passed upon when this case was here before (*Evans & Pennington* v. *Nail,* 1 *Ga. App.* 42 (57 S. E. 1020)), and which we then decided adversely to the contention of plaintiff in error; and even were we wrong in our decision, our ruling as to these propositions became the law of the case.    The contention is also again urged that the court erred in refusing, upon request, to

charge the jury that if they found, from the evidence in the case, "that in hiring these mules to the defendants by the plaintiffs, it was understood that the plaintiffs should assume the risk of all injuries to said mules, and that the defendants were not to be responsible for any injuries to them, and that, with this understanding, they hired these mules to the defendants, the court charges you that plaintiffs could not recover in this case, unless it be shown that defendants were guilty of gross negligence or wanton carelessness; and under these circumstances, in the absence of proof that the defendants were guilty of gross neglect and wanton carelessness, it would be your duty to find in favor of the defendants." The judgment reversing the ruling of the lower court upon the defendant's motion for new trial, when the case was here before, was largely based upon the omission of the trial judge to present this contention of the defendants; but it appears, from the charge in the record, that, while the request presented was not given to the jury in totidem verbis, the principle involved was covered in the court's charge to the jury, and appropriately presented.

The judge would have erred in refusing to submit to the jury the specific contentions of the plaintiff in error, as submitted in one of the written requests, but for the fact that the request was not perfect, and the judge was not required to perfect it. The request was as follows: "If you find that the defendants' employees were cutting down a tree, and it was leaning sufficiently to throw it safely the way the tree was being cut to fall, and that the mules in question were driven upon the safe side of the tree, and that, without fault on the part of the defendant, and without knowledge and sufficient warning or opportunity of defendants or their employees to avoid the same, a sudden hard wind or whirlwind suddenly struck the tree and threw it over on the mules in question and killed them, and before the defendants had time to move the mules so as to avoid the falling tree, that then and in that event they would not be responsible, and your verdict should in that event be for the defendant." To have given this charge as presented would have been to intimate (if indeed it did not amount to instruction) that the facts enumerated would necessarily attribute the casualty to the act of God; and, for this reason, it would have been violative of §4334 of the Civil Code.

There was no error in the charge of the court upon the non-lia-

bility of the defendants for the act of God.    The instruction was:
"If the mules were killed by the act of God, I charge you that the
defendants would not be liable, and the plaintiffs could not recover,
unless the defendants failed to exercise that ordinary care and dili-
gence which the law requires."    As was held in *Barfield* v. *G. S.
& F. R. Co.,* 1 *Ga. App.* 203 (58 S. E. 236), it can not be said that
any act can be attributed to God, from a legal standpoint, if it is
apparent or probable that the result could have been prevented by
the exercise of ordinary care and diligence.    In the present case
it matters not that the fall of the tree might be attributed to
the act of God.    If a sudden wind sprang up, and, striking the
tree, caused it to fall, where ordinarily it would not have fallen,
considering the method in which it was cut and the direction in
which it was leaning, the jury might find it to be an act of God;
but the killing of the mules by the tree could not be said to be the
act of God if, at the time the tree was being cut and at the time
the wind arose, and considering the way that the tree leaned, the
mules should not have been at such a time at the place where the
tree could strike them.    The charge was properly adjusted to the
evidence, for if, in the exercise of ordinary diligence, it was proper
for the mules to be at that place, at that time, the defendants would
not be liable for the killing caused by the tree's being thrown over
by the wind, if the jury found it to be an act of God.    But if, as
appears from much of the testimony, the logging should follow the
cutting, and the mules should not have been at that particular place
at that time, then the defendants would not be relieved even by the
act of God in overthrowing the tree.    To put the case a little more
strongly, if the defendants had tied the mules to the tree in ques-
tion and had proceeded to cut it down, cutting above the portion
where the mules were tied, and using all diligence to so cut the
tree in an opposite direction from the mules, it would ordinarily
happen that the tree would fall without the mules being hurt, and
yet it could not be said that this was the use of ordinary diligence
in the care of the mules, and that if, without the tree falling, light-
ning should strike the tree and kill the mules, the defendants would
be relieved of liability, because it was the act of God.    The judge
could not have given the charge requested, which relieved the de-
fendants from any liability if the jury believed that the killing was
the act of God, without withdrawing from their consideration the

determination of the question as to whether man had contributed to the result for which a divine Providence was only indirectly responsible. It is always for the jury to determine whether a result sought to be attributed to the act of God is really such, or whether the casualty may not rather be attributed to human negligence; and no injurious act can be attributed to God if it is plain that the result could have been avoided by ordinary diligence on the part of man. Upon a careful consideration of each of the assignments, we have been unable to find any error requiring the grant of a new trial, or any question whose importance would warrant an elaboration of our views upon any of the special grounds of the motion for new trial. *Judgment affirmed.*