P. J. HAMILL, Appellee, v. THE JOSEPH SCHLITZ BREWING
COMPANY, Appellant.

**Appeal:** TWO APPEALS IN SAME CASE: DOCKETING: ABSTRACT. An
appeal by defendant from a judgment for plaintiff, and also an
appeal from an order correcting the record of the trial court at
the instance of plaintiff, may be docketed as one case; and the
fact that a separate abstract of the record on the second appeal
was entitled an "amended abstract" was not ground for striking
the same, where the character of the paper was apparent on its face.
As both matters were phases of the same case and each in some
manner explanatory of the other they could be presented on the
appeal as fully and clearly in one abstract and one docketing as
in two.

**Same:** BILL OF EXCEPTIONS: CERTIFICATION: FILING. To constitute
the reporter's notes a bill of exceptions the certification of the same
does not have to be made at once and in court; if certified by the
judge and reporter and filed in the office of the clerk within thirty
days from the date of the judgment it is sufficient.

**Same:** WITHDRAWAL OF BILL OF EXCEPTIONS BY REPORTER: REFILING.
Where the reporter's notes of the trial have been properly certi-
fied and filed with the clerk, thus constituting them a bill of
exceptions, withdrawal of the same from the files by the reporter for
the purpose of making a transcript renders the document no less a
court record, and when returned by him it need not be refiled to
preserve its *status* as a record in the case.

Same: REVIEW OF ORDER CORRECTING RECORD. Conceding that an appeal from an order correcting the record to show a certification of the reporter's notes as of the date of filing the same is governed by the rules applicable to a review of proceedings of the court, and that the findings of the court have the force of a verdict, still the appellate court may determine whether the findings have substantial support in the evidence, whether the order or judgment was justified by the findings, whether the court erred to appellant's prejudice in rulings upon the evidence, or whether the judgment appealed from is void for want of jurisdiction.

Certification of reporter's notes: CORRECTION OF RECORD: EVIDENCE. On this proceeding to correct the record to show a certification of the shorthand notes of the trial on a later date than that in the certificate, the evidence is reviewed and held insufficient to support a finding that the certificate did not bear the signature of the judge on the day of its date, and of filing the notes with the clerk.

Same: NUNC PRO TUNC ORDERS. Authority of the court to remake a record once entered and duly attested by the officer whose duty it is to make the same is very restricted; and an entry *nunc pro tunc* will not be ordered, where it cannot be done without injustice to parties whose rights are affected thereby.

Same: CORRECTION OF COURT RECORD: EVIDENCE. Authority to correct a court record made at a previous term is limited to cases of evident mistake, such as are clearly noticeable, apparent to the observation, or clearly established by the evidence; and in a proceeding to correct its record the court is only authorized to consider the evidence produced on the hearing. Thus in determining the date at which the judge certified the reporter's notes of the trial, it was not proper for the court to obtain another signature, and with the aid of a magnifying glass compare it with the disputed signature and treat the knowledge thus gained as evidence.

Courts: DECISIONS IN VACATION: ADDITIONAL FINDINGS. The authority of a judge to determine matters in vacation is wholly dependent upon the statute or the agreement of the parties; and where a motion to correct the record was taken under advisement with the agreement that it might be decided in vacation, and the judge made his findings and order and gave official notice thereof, he could not without notice thereafter make an additional finding and order in the matter.

Bill of exceptions: STATUTORY COMPLIANCE: STRIKING FOR IRREGULARITIES. There should be substantial compliance with statutory pro-

visions concerning bills of exception, but they are not to be stricken from the records of the case because of mere irregularities in practice; especially where the irregularity or default is that of the trial judge, clerk or other officer having some duty to perform in connection with the same.

Change of venue: PUBLIC PREJUDICE. The statutory provision for change of venue on the affidavit of the party that the inhabitants of the county are so prejudiced against him that he cannot have a fair trial, does not limit such prejudice to personal hatred, dislike or ill-will toward the party himself, but includes the idea of prejudgment of the merits of his claim, although the party against whom it is directed stands well in the estimation of the inhabitants of the county. Thus the showing that plaintiff's claim had no legal standing except under the prohibitory law, alleged to be peculiarly distasteful to the people of the county, and that the disposition to ignore the statute was so general as to afford reasonable ground to believe that a fair trial of the claim could not be had in the county, was sufficient allegation of prejudice to authorize a change.

Change of venue: WAIVER OF RIGHT. Where a cause has been continued over the term after ground for a change of venue had come to the knowledge of the party applying therefor, the motion for a change should be denied; but upon an affirmance of an order granting a new trial, failure to have the cause redocketed at the next succeeding term of the district court was not a continuance, within the meaning of the statute, and did not as a matter of law require a denial of the change.

Same: FAILURE TO PAY COSTS: WAIVER. Where the court failed to designate the costs to be paid upon granting a change of venue, and it appeared that counsel had a standing arrangement with the clerk that costs of this character chargeable to his client should be charged to his account, and that counsel on the third day after the change was granted, applied to the clerk to pay the costs and did pay the amount called for, the right to the change was not waived by failure to pay the costs in time.

Direction of verdict: WAIVER OF ERROR. Error in sustaining a motion to direct a verdict is not waived because the party against whom it was directed also moved for a direction in his favor.

Intoxicating liquors: RECOVERY OF PRICE: PLEADINGS: AMENDMENT. Where the petition, in an action to recover payments for liquor because sold in Iowa in violation of the prohibitory law, alleged that the sales were made in this state, it was competent to show that the sales were made under an agreement that the title was to re-

main in the seller until delivery and payment, as tending to show sales in Iowa; and an amendment of the petition to that effect raised no new issue.

Appeal: SECOND APPEAL: LAW OF THE CASE. Where the issues and evidence on a second appeal were substantially the same as those on the former appeal, and the contention of the parties regarding the sufficiency of the evidence to take the case to the jury was the same, the decision on the former appeal regarding the sufficiency of the evidence was not mere *dictum*, but became the law of the case on the second appeal.

Intoxicating liquors: PLACE OF SALE: EVIDENCE. The question of whether the sales of liquor involved in this action were consummated in Iowa or in Wisconsin was largely a question of intent, to be gathered not alone from the writings but also from the conduct of the parties and their method of dealing, and was a question of fact and not of law.

Appeal: CORRECTION OF RECORD: REVERSAL: REMAND. Where the appellate court found on appeal from an order amending the record of the filing of a bill of exceptions that the evidence was not sufficient to support the order, and there was no showing that a different record would be made on a retrial, the record was properly corrected in the appellate court by treating the application to amend as denied and disposing of the case on its merits, rather than remanding the application for a further order of the district court.

Direction of verdict: CONSENT. Where defendant objected to the direction of a verdict for plaintiff, excepted to the ruling sustaining the motion and to the overruling of his own motion for a directed verdict, he cannot be said to have consented to a discharge of the jury and refusal of a submission of the case by consenting that a juror need not be called to sign the directed verdict.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH, Judge.

FRIDAY, SEPTEMBER 26, 1913.

THIS action was begun at law to recover from defendant a large sum of money alleged to have been paid by plaintiff to defendant for intoxicating liquors sold to him in violation of law. The action was brought in Carroll county, and there

tried in 1905, resulting in a verdict for the defendant. This verdict was set aside, and new trial ordered, a ruling which was affirmed on appeal. See 138 Iowa, 138. Thereafter, on motion of plaintiff, venue was changed to Greene county, and the case there tried in January, 1909. At the close of the evidence the court directed a verdict in favor of plaintiff for $10,346, and from this order and the judgment entered on said verdict the defendant appeals. After the appeal was taken and appellant's abstract and argument prepared and filed, appellee applied to the district court to change and correct the record which had been made in said court in such manner as to show that the reporter's notes, or alleged bill of exceptions, purporting to have been duly certified and filed on January 23, 1909, were not in fact certified on that date by the signature of the trial judge. The application was granted, as will be more particularly shown in the opinion. From this order also the defendant has appealed. The matter of both appeals has been presented in a single abstract and an amendment or addition thereto, and they will be disposed of in one opinion. *Reversed.*

*Dawley & Wheeler, Howard & Howard,* and *Miller, Mack & Fairchild,* for appellant.

*B. I. Salinger* and *L. H. Salinger,* and *Wilson & Albert,* for appellee.

WEAVER, C. J.—I. As defendant's right to be heard on the merits of the appeal from the judgment rendered against it in the court below is dependent on the question whether the evidence had been presented by a sufficient bill of exceptions or certified record, we proceed first to the matter of the second appeal.

Appellant is here met at the threshold with the objection by appellee that said second appeal was never separately or

independently docketed by the appellant in this court, nor

1. APPEAL: two appeals in one case: docketing: abstract.

was a separate or independent abstract of the proceedings for correction of the record filed therein. Relying upon such objection, appellee has himself caused the said appeal to be separately docketed, has filed therein an abstract showing the application, the hearing, and the order of correction, and moves for an affirmance thereof. The entire record upon the application, the order made thereon and appellant's notice of appeal were in fact filed herein as an amendment or addition to the original abstract, and appellee moves to strike the same for reasons already stated. The sole question here raised, as will be noted, is whether appellant may have the entry reviewed upon an abstract filed as an amendment or addition to the original abstract in the matter of the first appeal, or was he required to have it filed and treated as a separate or independent case? The proposition made on the part of the appellee finds no precedent for its support in the previous decisions of this court. Appeals from an order correcting a record below at the instance of an appellee have been of quite frequent occurrence in recent years; and, although the practice may not have been quite uniform in that respect, the method pursued by the appellant in this case has been frequently, and we think quite generally, followed. There is no statute which inhibits such practice, and every consideration of simplicity and directness of procedure is in its favor. Neither party is thereby deprived of any substantial right. The record may thus be presented as fully and completely in one abstract and one docketing as in two. Both matters are phases of the same case, each being explanatory in some measure of the other as successive chapters of the same history; and, if there be any persuasive reason why the appellant should go through the form of docketing them separately, unless it be by increasing the perplexity of the proceedings to multiply the chances of some technical slip to the

advantage of his adversary, it is not suggested in the briefs of counsel.

In *Garner's* case, 104 Iowa, 515, there were two appeals under one docketing and one abstract. Perhaps it would be more exact to say that the records upon the two appeals were separately abstracted in a single printed volume, and we refused to strike either as being an independent case improperly joined with the other. This would seem to be a precedent directly opposed to the rule urged by appellee, but counsel adroitly seeks to avoid its effect by saying that, while this is authority for the proposition that the abstracts upon two appeals in the same case may be bound in a single printed book and filed under a single docketing, yet appellant in this case, though filing a complete abstract upon each of its two appeals under a single docketing, has committed the grave blunder of entitling or labeling one as an "abstract" and the other as an "amendment," and for this reason the so-called amendment should be stricken and a hearing upon the merits of the second appeal denied. We are not content to so hold. There is no such charm or finality in a misplaced word or inexact label. If "amended abstract" is not a proper title in this instance—a proposition we are not ready to admit—or if "additional abstract" or "abstract on second appeal" would have been more nearly descriptive of the real character of the document filed, it may be that the choice of the former would have been open to criticism as an incorrect appellation, but it would be an impeachment of the intelligence of counsel and court to assume there was the slightest possibility of doubt as to the real nature and purpose of the document, and it would be the extreme of unreasonableness to hold that on this account it should not be treated for just what an examination of its contents demonstrates it to be—an abstract of the record showing the ruling sought to be reviewed and all the proceedings leading thereto. The character of the paper being clearly apparent upon its face, a slight inaccuracy in naming it is immaterial. The

motion to strike the abstract setting out the record upon the second appeal and motion to affirm the order so appealed from because not separately and independently docketed are overruled.   On a somewhat different state of facts the rule we here apply was distinctly recognized in *Keller v. Harrison*, 151 Iowa, 329.

II.   The judgment against defendant on the directed verdict was rendered by the court on January 23, 1909, and by the clerk spread at large upon the court record on February 13, 1909.   Defendant's appeal was perfected by service of proper notice on February 16, 1909.   Later the appellant, apparently fearing that some jurisdictional objection might be raised because of the difference between the date of rendering the judgment by the court and the date of recording the same by the clerk, served another notice of appeal therefrom. Thereafter appellant filed his abstract of the record, showing, among other things, that the evidence and proceedings of the trial were fully taken down by the official reporter of the court, and that upon conclusion of the trial the reporter's notes thereof were duly certified by the judge and by the official reporter and filed in the office of the clerk of the court, thereby constituting a good and sufficient bill of exceptions as provided by our statute.   Thereafter, and after the time for filing or amending a bill of exceptions in said cause had fully expired, the appellee applied to the trial court, as we have already mentioned, to correct the record in said cause by changing the entry of the date of filing the bill of exceptions to show that such filing was not made on January 23, 1909; it being alleged that the actual filing took place on April 26, 1909.   The motion was resisted by the appellant, and the hearing was had before the court, the judge presiding being the same who presided at the principal trial and signed the certification of the record.   The evidence upon the hearing was substantially as follows:   It was undisputed that the shorthand notes were filed with the clerk on January 23, 1909, at which time they bore a proper certification by

the reporter, but the fact whether the certificate had been signed by the judge is in dispute. It also appears that on Saturday, January 23, 1909, or not later than the following Monday, January 25, 1909, the reporter, having been requested by appellant to make a transcript of the record, took the notes from the clerk's office for the purpose of doing such work. The transcript was made promptly, or within a few days, and delivered to appellant's counsel. It includes a copy of the certificate to the shorthand notes, showing the same to have been signed by both the judge and the reporter under date of January 23, 1909. This transcript was on February 3, 1909, certified to be correct by both judge and reporter. The substance of the claim made by appellee is, as already noted, that when filed with the clerk the alleged bill of exceptions was fatally defective for want of the signature of the judge, and that the signature of that official as it now appears upon the certificate was attached thereto on or about February 3, 1909, while in the possession of the official reporter, and that as the notes with the perfected certificate thereon were not returned to the clerk's office until after the expiration of the statutory time (thirty days) allowed for filing a bill of exceptions, it was too late to save the record, and appellant is in court without a sufficient bill.

To sustain his claim as to the condition of the certificate on January 23, 1909, three of the attorneys for appellee testify that on January 23d, after the notes had been left with the clerk, they went to the office and examined the paper, and that the certificate was signed by the reporter only and not by the judge. Two of them further testify that they saw the notes again on January 25, 1909, in the possession of the reporter, and that the certificate still lacked the signature of the judge. Against this showing the appellant relies: First. On the fact that the record as it stood before the order changing it showed clearly the filing of the duly certified notes on January 23, 1909. Second. On the presumption of regularity and correctness which attaches to a court record.

Third.  On the fact that within ten days from that date the judge and reporter reaffirmed said record by certifying to a transcript which sets out in full a copy of the certificate to the original notes, showing thereon the signatures of both judge and reporter, and at or about the same time repeated such reaffirmation by certifying to a duplicate of said transcript containing the same matter.  Fourth.  The three attorneys representing the appellant on the trial testify that on January 23, 1909, after the judgment had been rendered and before Mr. Dawley, the leading counsel for the defense, left Jefferson where the case was tried, they consulted together upon the importance of being sure that their record had been properly preserved, and that to remove any doubt on the subject Mr. Dawley and one member of the associated firm went together to the clerk's office, where they personally examined the notes and saw that they were duly filed and that the certificate thereto was signed by both the judge and the reporter.  Another of associate counsel separately examined the paper and found it regular.  Fifth.  The clerk swears that he remembers the fact that two of counsel for the defense testifying as above came to this office on the day in question, and did call for and examine the package of shorthand notes, but he was not informed, or at least does not remember hearing, the purpose of said examination.  Sixth.  The reporter testifies that to the best of his knowledge and recollection the certificate was complete, with both signatures attached, when he filed the notes with the clerk.  He is not able to speak with independent recollection of the specific fact, but it was his custom and method of business.  He is sure that the judge's signature was upon the certificate to the notes when he made and certified the transcript thereof on February 3, 1909.  Seventh.  The trial judge admits the genuineness of his signature to the certificate bearing date and filing mark of January 23, 1909, and of his signature to the certificates upon the transcript and duplicate thereof under date of February 3, 1909, but states in the record that he has not the slightest

recollection of the time when or place where the signature in dispute was written.

The hearing upon plaintiff's application as aforesaid was completed on January 21, 1910, and with the consent of counsel was taken under advisement by the court to be decided in vacation as of the last day of the term. On April 12, 1910, in vacation the court made and caused to be filed his finding in favor of appellee and order for correction of the record. The forms and terms of that order are hereinafter set forth. The order is prefaced by a statement and discussion by the judge. After referring to the evidence offered on either side and expressing his opinion of its general meaning and effect, he proceeds to explain the circumstances attending and following the entry of the judgment, and says that on Monday, January 25, 1909, he and the reporter were in attendance upon court in Calhoun county, and on said afternoon a case was tried before him and reported by the official reporter, and the notes in said case certified by him on that day. Referring to the certificate so made in the Calhoun county case (which has of course, no connection with this case), the judge adds the following: ·

The undersigned has taken occasion to compare the signature of the judge on the certificate in question in this case and the certificate to the shorthand notes in the case referred to in Calhoun county, as having been investigated on the 25th of January, 1909, in the afternoon thereof, and has taken occasion to examine, by aid of magnifying glass the two signatures and the ink and pen used in writing the two signatures, the one in controversy the date whereof is under investigation, and the one in Calhoun county the date whereof is fixed and known. And *under the evidence* thus adduced, and as cumulative and corroborative of the testimony of the plaintiff and movent, the undersigned judge finds that as a matter of fact the certificate in question was not signed on the 23d day of January, 1909, by the judge of said court. Whatever may be said regarding the testimony of Messrs. Dawley and Howard, regarding the fact that they saw a certificate signed by the judge and reporter on the forenoon of January 23d, the truthfulness of which testimony may not be questioned, still the

matter under consideration is the present one, to wit, the one which purports to have been signed on January 23d, and which only bore the signature of R. C. Turner, reporter.

These findings are followed by an order or judgment as follows:

It is ordered, adjudged, found, and decreed that the certain certificate attached to the alleged shorthand report of the testimony taken in this cause did not, on the 23d day of January, 1910 (1909?), bear or have the signature of Z. A. Church, who was the presiding judge on the trial of this cause, which signature the said certificate now bears and has. And it is ordered, adjudged, found, and decreed that the record in this cause show and contain the aforesaid correction.

This order was filed in the clerk's office on April 14, 1910, and duly recorded in the court record, and by order of the judge in the same connection it was provided that copies of the said findings and judgment entry on the motion to correct the record be sent to the counsel of the respective parties. Thereafter, on May 28, 1910, without notice to the defendant the judge appears to have reopened the proceedings and entered therein what he denominates "an additional order and judgment" as follows:

As an additional order and judgment made herein on the 12th day of April, 1910, the court hereby finds, orders, adjudges and decrees as follows: The alleged shorthand report, which is referred to in the order and judgment, to which this is additional, was taken from the office of the clerk of this court on January 23, 1909, by R. C. Turner, reporter, and taken for the purpose of making a transcript of the said report. He retained said shorthand report in his possession until he returned the same to the office of the said clerk on April 26, 1909. It is therefore, ordered, decreed, and adjudged by the court that the filing entry on said shorthand report and notation of such filing on the appearance docket be added to as follows: Where it appears on said shorthand report or on said notation that said shorthand report was

filed on January 23, 1909, put after the words and figures
'January 23, 1909,' the words 'on which day this paper was
taken from the office of the clerk of this court by R. C. Turner,
reporter.' After the words and figures 'April 26, 1909,' add
'returned to this office on April 26, 1909, by R. C. Turner,
reporter, after having been in his possession since January 23,
1909.'

The appellant complains of these orders on numerous
grounds which may be summarized as follows:  First, that
under the conceded facts the court had no authority to thus
change the record, or if the court is vested with any discre-
tion in such cases, the order is an abuse of discretion; second,
that the evidence upon the disputed questions of fact is clearly
insufficient to sustain the order; third, that, the court or judge
whose duty it was to sign the certificate and did sign it, having
affirmed its proper filing by certifying the transcript thereof,
thereby leading the appellant to believe and rely upon its
truth and regularity, it cannot rightfully so change the record
as to defeat appellant of its right to a hearing upon its appeal;
fourth, that the judge by his finding shows that after the evi-
dence was closed he erroneously sought the aid of other evi-
dence not offered or admitted on the hearing, to wit, the com-
parison of the signature on the certificate with other signa-
tures, and a microscopical examination thereof, and that the
same was a controlling factor in his decision, whereby the
appellant has suffered material prejudice; and fifth, that when
the judge pursuant to the submission and the consent of par-
ties reached his decision in vacation, formulated the order or
judgment entry, and caused the same to be duly entered of
record and copies thereof sent to counsel as indicating the
determination of the controversy, his authority and jurisdic-
tion in the premises were exhausted, and the amendment or
additional order and judgment of May 28, 1910, is therefore
not only erroneous but void and of no effect.

The case has been exhaustively argued on both sides.  It
presents a novel question, or at least a novel phase of an old

question, and we have read the record closely and followed
with genuine interest the course of counsel's
learned and ingenious argument in support of
the judgment changing or amending the date
of the entry of filing the bill of exceptions, and we have
frankly to admit that the examination leaves us with the dis-
agreeable impression that, if the result reached below must
stand, then the law at this point not only fails in its mission
to establish and administer justice between men, but becomes
the engine of injustice.   This is said without any reflection
whatever upon the trial court, parties, or counsel; for, if a
proper interpretation of the statutes and the established rules
of law and practice lead to the conclusion of which appellant
complains, the court is not responsible therefor, but must pro-
nounce it without regard to its intrinsic right or wrong.   But
is such result necessary?   On this question difference of views
may exist without disparaging the fairness or integrity of
either party to the discussion.

2. SAME: bill of
exceptions:
certification:
filing.

Let us for a moment recall the aspects of the case on the
second appeal.   We are here not concerned with the merits or
demerits of the appellee's claim on which he was awarded
judgment in the original case.   The one question at present
is that which involves the appellant's right to have said judg-
ment and the proceedings in which it was rendered reviewed
on appeal.   The right of appeal is a valuable one, and is given
equally to all litigants on like conditions.   For a review of
the entire case it is manifestly necessary for the court to have
before it the evidence produced on the trial below.   This is
secured by having the same reduced to written form, prop-
erly certified and made part of the record.   In other words,
the evidence is to be preserved in a bill of exceptions.   Under
the earlier practice the procurement, settling, and filing of
such bills were frequently matters of no little trouble and con-
tention, but since an official stenographer or shorthand re-
porter became a part of the equipment of our courts and prac-
tically every case is reported in full and in minute detail, the

Legislature has simplified the practice by making the reporter's notes, when properly certified and filed, perform the office of a bill of exceptions. Code, Sections 3675, 3749. Stated otherwise, under our present statute and practice the reporter's notes, certified by himself and the trial judge and filed in the office of the clerk within thirty days from the date of the judgment from which appeal is taken, constitute a bill of exceptions and make the reported evidence a part of the record. The purpose of these provisions is self-evident. The certificate of the reporter who made the notes and the judge who presided at the trial constitutes an official identification of the shorthand record made by the reporter, and the filing with the clerk in proper time is a guaranty of its due preservation. The certificate is not required to be made in court or by the court, but by the judge and reporter. It is not necessary that the certification be made at once, but it is sufficient if it be made and filed within thirty days.

While the filing makes the notes a part of the records of the clerk's office where they are to be kept and preserved, it cannot be presumed to have been the legislative intent to forbid the temporary physical possession thereof by the reporter to enable him to prepare a transcript if one is called for by a party to the action. It is a matter of common knowledge among lawyers and others having anything to do in these matters that these notes are practically unreadable by any person except the reporter who made them. He alone can make an adequate transcript of them. It is his certificate to the transcript of them, and not that of the clerk for which the statute provides. In many cases the making of a transcript is the work of many days and not infrequently a matter of weeks. The reporter cannot be presumed to do this work in the clerk's office. As a matter of practical necessity he must be permitted, under proper regulations, to take them to his home or to his private office, or, as is the common custom, to carry them with him as he goes from court to court with the

3. SAME: withdrawal of bill of exceptions by reporter: refiling.

judge until he has had reasonable opportunity to complete
the translation.  This possession by the reporter, an officer of
the court, is a lawful one for a lawful purpose, and such taking
of the notes out of the physical boundaries of the clerk's office
or of the courthouse is not a withdrawal of such document
from the files in any such sense as to make it any less a proper
court record than it was before it passed from the manual
possession of the clerk to the manual possession of the reporter.
When returned to the clerk's office it requires no refiling to
preserve its *status* as a record in the case.  Directly in point
upon this proposition, see *Pollock v. Aikens,* 4 S. D. 374 (57
N. W. 1).

But, coming to the question of fact whether the certificate
which is attached to the notes filed January 23, 1909, showing
as of that date the signatures of both judge and reporter is
true or false, we are met by the objection that
upon this proposition we are bound by the
finding of the trial court.  Even if it be true
(which we do not admit) that this appeal is governed by the
general rules applicable to the review of proceedings at law,
and the findings of the trial court are to have the effect of a
jury verdict, it is nevertheless also true that upon appeal
we may inquire whether the findings have substantial support
in the record, whether the order or judgment in question is
justified by the findings of fact, whether the court erred to
the appellant's prejudice in rulings upon evidence, and
whether the order or judgment appealed from is void for
want of jurisdiction in the trial court.  These objections are
raised by appellant, and in some respects we think they are
well grounded.  We may here add that on different occasions
this court has exercised authority to pass upon the sufficiency
of evidence to justify the correction of a record affecting the
question of its own jurisdiction.  Perhaps the latest instance
of this nature appears in *Eichmeier v. Bank,* 153 Iowa, 154.

Of the merits of the fact question it is to be said that we
have to start with a court record in due form bearing the ad-

4. SAME: review
   of order cor-
   recting record.

mitted signatures of both judge and reporter, certifying in
the usual and proper manner, under date of
January 23, 1909, to the identity of the notes.
The record shows with equal precision the fil-
ing of these notes on the day mentioned, both
by the filing mark thereon and by the minute thereof in the
clerk's appearance docket. The reporter who prepared the
certificate swears that according to his best recollection and be-
lief and his uniform method and custom of performing these
duties that the certificate was thus complete at the time when
he filed the notes. The trial judge admits his signature, but
has no recollection of the time when he subscribed this particu-
lar paper. Within ten days after that date they both executed
a certificate to the reporter's transcript, and in that transcript
included a copy of the original certificate bearing date Janu-
ary 23, 1909. Omitting for the present the oral testimony relied
upon for the appellee, it would be difficult to state a case in
which the strong presumption of verity which attaches to a
court record could be more strongly fortified or reinforced by
the admitted circumstances. Proceeding from the undisputed
to the disputed testimony, we have, as we have said, the testi-
mony of the three attorneys for the appellee who say that after
the paper was filed on the 23d of January they examined the
certificate, and found that it did not have the judge's signa-
ture, and that such was its condition in the reporter's pos-
session on the 25th. This is met by the testimony of three of
the attorneys on the other side, one of whom looked at the
notes after they were filed on January 23d and saw no defect
therein, after which there was a consultation between counsel
on the subject, and thereupon on the same day, to satisfy
themselves that the certificates had been properly made, the
other two went to the clerk's office, examined the certificate,
and found it signed by both reporter and judge. The clerk
corroborates them to the extent that he remembers that these
witnesses did come to his office on that day and call for and
examine the notes. When we give to each and all of these

5. CERTIFICATION
OF REPORTER'S
NOTES : correc-
tion of record :
evidence.

opposing witnesses the credit of being absolutely honest and of speaking the truth as they believe it to be with entire candor, and when in connection therewith we consider the weight of the presumption of regularity and truth which attaches to a court record made in due form and in apparent due course of the duty devolving upon the judge, reporter, and clerk, it seems to us an impossible conclusion that the heavy burden which appellee assumes in attacking a record made in due form has been sustained. Had the judge himself on reflection recalled the fact that his certificate was made at a latter date, or had he disposed of it as an issue of veracity between the witnesses, the case at this point might wear a different aspect. But he does not. On the contrary, he declares in his findings that the truthfulness of Mr. Dawley and Mr. Howard ''that they saw a certificate signed by the judge and reporter on the forenoon of January 23d'' is not to be questioned. If the truthfulness of these witnesses ''may not be questioned,'' then they did examine the notes, they did examine the certificate, and they did find it signed by the trial judge, and the conclusion reached that appellee is right in his ·demand for a change of the record is inexplicable unless the key is to be found in the somewhat cryptic language with which the above-quoted statement closes, to wit, ''still the matter under consideration is the present one, to wit, the one which purports to have been signed on January 23d, and which only bore the signature of R. C. Turner, reporter.'' It will be noted that the concession is that Dawley and Howard saw *''a certificate''* signed by both judge and reporter, but that the matter *now* being investigated ''is *the present one,* to wit, the one which purports to have been signed on January 23d,'' etc. These expressions as illuminated by the words we have italicized suggest the thought in the mind of the judge that Dawley · and Howard were in some manner self-deceived or misled by looking at some other certificate not attached to the reporter's notes in this case, or that they *did* see a certificate duly signed and attached to these notes, as they said they did, but that

*such* certificate is not identical with "the *present* one." To support the first suggested interpretation that these witnesses were self-deceived there is not a word of evidence in the record. For the other suggested conclusion there would seem to be no foundation, except in the fact that if we concede all the witnesses to be right, and that when examined by Dawley and the Howards the certificate attached to the notes was duly signed by the judge, and when later examined by Salinger, Wilson, and Albert the certificate attached was not signed by the judge, it would necessarily follow that either there were two certificates, one complete and the other incomplete, or that in some manner the one first seen had become lost or removed and another substituted therefor. But the bare fact that the testimony of reputable witnesses having equal opportunity to know the truth is diametrically opposed is not of itself sufficient ground for impeaching the good faith or veracity of either. Let us assume, as the court below no doubt did, that these men are all entirely credible, and what have we? The witnesses for appellant first examined the notes for the express purpose of ascertaining whether they were properly certified and found by the evidence of their own eyesight that the judge's signature was attached. The witnesses for appellee later in the day examined the certificate for the same purpose and found they were not certified or attested by the signature of the judge. Still assuming the perfect integrity of all the witnesses and the correctness of the court's conclusion that their truthfulness is "not to be questioned," we are forced to fall back upon the theory of an honest mistake. Now as between two sets of witnesses of equal credibility and intelligence, who examine the same certificate on the same day to ascertain whether it is signed by a certain person, who are most likely to be in error in relation to the appearance of such document—those who swear they found the signature, saw it, and read it, or those who swear that they did not find it, and that it was not attached? The answer is obvious. It is manifestly less likely for him to be mistaken who swears that he

looked for the name, found it, and read it, than for him who swears that he looked for it, did not find it, and that it was not there. Even if there were no presumption in favor of the record, and there were no direct corroboration of it in the undisputed testimony of the reporter and clerk, and no indirect support in the inability of the presiding judge to remember when or where his admitted signature was written, the testimony upon which the demand for a change of the record is based so clearly lacks the clear preponderance which the law requires to justify such relief that a special finding by a jury impeaching the record could not, as we have already intimated, be permitted to stand.

The authority of the court to remake a record once entered by the proper officer, and especially where that record is duly attested by the admitted signatures of the officer or officers whose duty it is to make the same, is

6. SAME: *nunc pro tunc* orders.

not unlimited. On the contrary, it is very restricted, and entries *nunc pro tunc* will not be ordered except when it can be done without injustice to either party whose rights are thereby affected. *Mitchell v. Overman,* 103 U. S. 65 (26 L. Ed. 369).

The statute permitting the correction of a court record made at a previous term limits the authority to cases of "evident mistake" (Code section 244); not possible mistake or even probable mistake, but *evident* mistake.

7. SAME: correction of court record: evidence.

That only is "evident" which is clear, noticeable, apparent to observation, or, to put it in its most favorable form for the appellee, that which is clearly established by the evidence. It would be folly to say that this alleged mistake was evident, or that it has been clearly established by the evidence offered on the hearing below. This situation appears to have been recognized by the trial judge. The evidence so offered and introduced did not satisfy him that the bill of exceptions was not certified by himself just as the record shows, and after the hearing and submission of the application to correct, and while having the decision under

consideration, he proceeded to solve the doubt to his own satisfaction by procuring a .signature which had been made by him on January 25, 1909, in another case in another county, and with the aid of a glass comparing the signature thus procured with the one in dispute. That this evidence, not offered or introduced on the hearing, was a decisive factor in the mind of the trial judge is shown by that part of his written finding above quoted where he says he "has taken occasion to examine by the aid of a magnifying glass the two signatures, and the ink and the pen used in writing the two signatures, the one in controversy the date whereof is under investigation and the one in Calhoun county the date whereof is fixed and known. And *under the evidence thus adduced and as cumulative and corroborative* of the testimony of the plaintiff and movent, the undersigned judge finds that as a matter of fact the certificate in question was not signed on the 23d day of January, 1909, by the judge of said court." Upon this the appellant assigns error, and we hold that the exception is well taken. When the hearing was closed and the question upon the application to change the record was submitted for decision, no further evidence could be introduced in the case or taken into consideration by the court except, possibly, upon a reopening of the hearing for good cause shown and opportunity given to both parties to appear and protect their rights in the premises. If a comparison of signatures and ink and pen was of material aid in settling the controversy, as the trial judge appears to have thought, it was certainly of importance to the appellant to be represented and test the comparison by personal examination or by the testimony of experts or otherwise as should seem advisable. The court expressly treats these things as "evidence" both "cumulative and corroborative," and declares that it is "under the evidence as thus adduced" his conclusion is reached. The judge or court in such cases, no less than the jury to which an issue of fact is submitted, is bound to determine the question in dispute according to the evidence produced upon the trial. If a

jury in passing upon a disputed signature or writing of any kind should, after retiring to their room, obtain possession of another signature or writing not put in evidence, compare the respective papers with the aid of a magnifying glass, and treat the knowledge thus obtained as cumulative and corroborative evidence by which their finding is influenced, the verdict so reached would be promptly set aside. The reason for so holding is no less apparent where the court or judge admittedly commits like error.

III. The error above pointed out is sufficient to require a reversal of the judgment or order directing a change to be made in the record of the district court. But there is another aspect of the case which we think should not be overlooked. It will be observed that the order of correction, so far as it relates to the date of certification by the judge, goes no further than to say that the certificate attached to the notes did not, on January 23, 1909, bear or have the signature of Z. A. Church, who was the presiding judge on the trial of the cause, which signature the said certificate now bears and has. As will be noticed, this order does no more than negative the signing of the certificate on January 23, 1909. There were still twenty-nine days after that date on which the certificate could properly have been made; and, as it is conceded not only that the notes were filed within the prescribed thirty days, and that the judge's signature was affixed to the certificate within the same period, it follows, under the rule of reason and the presumption of regularity which obtains with reference to the conduct of public officers within the scope of their duties, as well as under the ruling of this court in *Wilson v. Church,* 60 Iowa, 112, it would still be presumed that the perfected bill was filed within the proper time even though the date of the clerk's entry was confessedly prior to the certification. The decision and judgment that the bill was not certified on January 23, 1909, was entered, as we have seen, on April 12, 1910, in vacation, and the parties duly notified thereof. The effect

8. COURTS: decisions in vacation: additional findings.

of that entry, as we have just noted, fell short of the end
sought by appellee. Thereafter, on May 28, 1910, at whose
suggestion, if by any one, does not appear, the trial judge in
vacation and without notice to appellant returned to the con-
sideration of the case, and caused to be entered "an additional
order and judgment," to the effect that the clerk's record be
made to show that the stenographic notes were taken out by
the reporter on January 23, 1909, and that they were returned
to the clerk's office on April 26, 1909. The point of this addi-
tional judgment in the estimation of the appellee is that, this
fact being decided, it follows that, even if the certification by
the judge was made within the thirty days, it still appears that
the notes were not returned to the clerk and refiled within the
period named. Whether, if this additional entry be of any
force or validity, it has the effect claimed for it by the appellee,
or whether a socalled refiling was necessary to the completion
of the bill of exceptions, we shall not now discuss or decide,
for we are of the opinion that said entry was unauthorized
and void, and the case must be disposed of as if it had never
been made. The authority of a judge of a court of record to
hear or to decide a case in vacation is statutory (Code, section
247), and any judgment or order made by him not in term,
save only as provided by statute or in pursuance to the stipu-
lation or agreement of parties, is of no effect. The stipulation
of the parties was that the matter in controversy might be
decided in vacation as of the last day of that term (January,
1910), and that such decision should be accompanied by the
judge's findings of fact. The term having adjourned, the
judge in pursuance of the authority thus given him proceeded
in vacation, under date of April 12, 1910, to make his findings
of fact and formulate and sign his order or judgment thereon,
directing a specified correction of the judgment. These find-
ings and order or judgment he made or caused to be made in
triplicate, one copy to be delivered to the clerk for proper
entry upon the record, and one copy to each of the parties,
thereby giving official notice of his conclusions in the case

and of the nature and extent of the relief granted. With this duty performed his functions as judge sitting in vacation ceased, his power under the statute and stipulation was exhausted, and he could not, of his own motion and without notice, withdraw a decision so made and entered of record, nor could he six weeks thereafter lawfully undertake to extend or diminish its legal effect by a subsequent or additional entry without notice to all parties concerned. Even the court in session and at the same term cannot rightfully exercise such authority without notice. *Ins. Co. v. Duffie,* 67 Iowa 175; *Townsend v. Wisner,* 62 Iowa, 672. Even if it were allowable upon complaint or request of either party for the judge in vacation to reopen the matter once decided, for further consideration or for additional corrections of the record (a proposition which we by no means admit), it is too clear for argument that it ought to be done only upon notice to every party liable to be prejudiced by such proceedings. The so-called additional order and judgment of May 28, 1910, must therefore be held void.

Concluding this branch of the case, we may properly add that while substantial compliance with statutory provisions concerning bills of exceptions is properly insisted upon,

9. BILL OF EXCEPTIONS: statutory compliance: striking for irregularity.

it is the general doctrine that they will not be stricken for mere irregularities in practice, and this is especially true where the irregularity or default is that of the trial judge, or clerk, or other officer who has some duty to perform in connection therewith. *Hill v. Guaranty Co.,* 250 Ill. 242 (95 N. E. 150); *Evans v. Nail,* 7 Ga. App. 129 (66 S. E. 543); *Hawley v. Le Clair,* 18 Wyo. 1 (102 Pac. 850); *Traction Co. v. Ruthman,* 85 Ohio St. 62 (96 N. E. 1019, Ann. Cas. 1913-A, 911); *Mitchell v. Overman,* 103 U. S. 65 (26 L. Ed. 369); *Borer v. Chapman,* 119 U. S. 596 (7 Sup. Ct. 342, 30 L. Ed. 532); 3 Cyc. 44, and cases cited; 3 Ency. Pl. & Pr. 474.

It is expected that the party desiring a bill shall be vigilant and attentive, but where in the exercise of reasonable

care he waits upon the proper officer having charge of the record, and finds on file that which the statute makes a bill of exceptions, and is furnished with a transcript thereof, with the certificate of the proper officers that the notes were in fact duly certified and filed within proper time, it ought not to be said that reasonable care requires him to go behind the record thus made and have the judge or clerk verify it by extrinsic evidence before he can rest upon the assurance that he has a bill of exceptions. There ought to be somewhere a time and place when he may rest upon the verity of a solemn record of a court of general jurisdiction. The law and its practical administration ought to be something more than a system of traps and deadfalls. The courts of Ohio and Wyoming have had recent occasion to consider the question (see *Hawley v. LeClair, supra,* and *Traction Co. v. Ruthman, supra*), and in each case they hold that irregularity and delay on the part of the judge in certifying a bill of exceptions prepared and ready for his signature in due time shall not be held to affect the validity of the bill, or deprive an appellant who is chargeable with no laches in the premises of a hearing upon the merits of his appeal. The discussion of the rule in the cited cases is too long to be embodied herein, but they lucidly state and sustain the principle which we have announced. That the failure of an officer of the court to perform a duty should not be allowed to prejudice the rights of a party in no way responsible therefor was also affirmed by us in *Lacey v. Newcomb,* 95 Iowa, 293, although that case did not involve the matter of a bill of exceptions. See, also, 3 Cyc. 44, and the numerous cases there cited.

IV. We turn now to the principal case. The plaintiff had for a considerable period been a saloon keeper in Carroll and purchased large quantities of beer from time to time of the defendant company, doing business in the state of Wisconsin, for use in his business, and made payments therefor to the extent of about $7,000. This action was thereafter brought to

10. CHANGE OF VENUE: public prejudice.

compel a repayment of said sum to plaintiff on the ground
that the sales were made to him in violation of the prohibitory
law. of the state, and that under the provision of said act
money so paid in such illegal transactions is recoverable in
an action at law.    The action was begun and first tried in
Carroll county, resulting in a verdict for defendant.    On
motion of plaintiff the verdict was set aside and new trial
ordered, from which ruling an appeal was taken to this court.
The order for a new trial was by us affirmed as being within
the discretion of the trial court, the opinion therein being
filed April 8, 1908.    Procedendo was transmitted to the dis-
trict court of Carroll county November 27, 1908.    At the
opening of the December, 1908, term of that court the plaintiff
filed a motion for change of place of trial from Carroll county,
on the ground that the inhabitants of said county were in
general so prejudiced against the provisions of the prohibitory
liquor law and their enforcement that he could not obtain
a fair trial in that jurisdiction.    The defendant contested the
motion on the ground that it had not been made in the time
allowed therefor by law, and because it was not alleged that
the inhabitants of the county were prejudiced against the
plaintiff.    The objections were overruled, the motion sus-
tained, and the cause sent to Greene county for trial.    Error is
assigned upon this ruling.    That the allegation of prejudice
was sufficiently stated we are satisfied.    It is true that the
statute (Code, section 3505) says, in substance, that he must
allege that the inhabitants of the county are so prejudiced
against him that he cannot obtain a fair trial therein.    The
word "prejudice," within the fair meaning of this expres-
sion, is not to be limited to personal hatred, dislike, or ill
will, but includes as well the idea of prejudgment of the merits
of his claim, and this may exist although the party against
whom it is directed is otherwise a person standing well in the
estimation of the people of his county.    If, then, it be granted
that plaintiff's claim has no legal standing except as it is
found in the prohibitory statute, and such statute is peculiarly

distasteful to the people of his county, and the disposition to ignore its terms or frown upon its enforcement is so general or widespread as to afford reasonable grounds to believe that a fair trial of such a claim could not be had, the court did not err in holding the showing of prejudice to be sufficient.

It is further objected that the motion should have been denied because it was filed too late. The showing made by the plaintiff explains the failure to make the application earlier by evidence that the existence and extent of the prejudice of which he complains was not known to him until after the first trial, and the motion was prepared and presented at the first opportunity after the first appeal had been decided and the cause remanded for new trial. The point is made by appellant that, although procedendo was not filed until November 24, 1908, it could have been procured at any time after April 9, 1908, and that as a term of the district court had intervened between these dates, it should be held that the right to move for a change of venue had thereby been lost or waived. We are not disposed to hold that as a matter of law the delay in redocketing the case for trial in the district court was such as to require a denial of the motion. It may be admitted that when the case has been once continued after the grounds for a change have come to the knowledge of the party asking it, the motion will be denied (Code, section 3506), but the failure to have the case redocketed for the October, 1908, term was not in our judgment a continuance within the meaning of the statute. A delay in redocketing, so long continued that the court could reasonably hold it negligence as a matter of law, would present a different question. It is further to be noted that an affidavit of plaintiff in support of his motion declares that he filed the same on ''the first day of the first term at which this motion could be presented after it being known to him that ground existed therefor.'' This would seem very clearly to bring the application within the letter

*11. Change of venue: waiver of right.*

as well as the spirit of the statute. The court did not err in holding the motion to be timely.

Finally, it is objected that the change was not perfected by paying the costs thereof by the morning of the second day after the motion was granted. The statute provides that the court granting a change of venue shall designate the costs of such change, or the costs rendered useless by reason thereof, and the change shall not be deemed perfected until they are paid. Code, section 3511. It is further provided that if not paid by noon of the second day, the change shall be deemed waived. Here, however, the court in its ruling sustaining the motion did not designate even in general terms the costs which were to be paid, or make the change conditional upon their payment. It is shown that counsel for plaintiff had a continuing arrangement or agreement with the clerk by which costs of this character chargeable to his clients were charged to said counsel's account, and at stated intervals settlements were had between them and such items duly adjusted. It further appears that one of said counsel did apply to the clerk on the third day, and was told that said officer did not yet know what the costs would be, but thereafter said the fees required to be paid amounted to $1, which was then and there given him. Under these circumstances there was no waiver of the change, and the court to which the cause was sent was not deprived or divested of authority to take jurisdiction thereof and try it. See *Faivre's Case,* 117 Iowa, 730; *Simons v. R. R. Co.,* 128 Iowa, 146, 147.

12. SAME: failure to pay costs: waiver.

The objections to the change of venue being disposed of, the principal question remaining for consideration is whether the court erred in directing a verdict for plaintiff. The record shows that, the evidence having been introduced, the plaintiff moved for a directed verdict in his favor on the ground that the undisputed testimony clearly showed that the admitted sales of beer to the plaintiff were made in Iowa contrary to

the prohibitory statute, and plaintiff is therefore, under the terms of said statute, entitled to a return of the purchase price admittedly paid by him. The defendant filed a motion for a directed verdict in its favor because of the insufficiency of the evidence to sustain a verdict for plaintiff, and because the sales in controversy were transactions in interstate commerce, and if the Iowa statute is to be so construed as to permit a recovery in this case, it is void under article 1, section 8, of paragraph 3 of the Constitution of the United States. The defendant's motion was denied and plaintiff's motion sustained. Error is assigned upon each ruling.

It is contended for the appellee that the parties having each moved for a directed verdict, insisting that the evidence discloses no question for submission to a jury, it is equivalent to a consent that the jury be discharged and the court shall decide or direct the verdict. In such case, it is argued, while the party against whom the decision is made may except to the conclusion reached by the court upon the merits of the case, he cannot be heard to allege error because of a refusal to send the case to the jury. This proposition has the support of many authorities, and in *Bank v. Crabtree,* 86 Iowa 732 that view would seem to have been incidentally approved, but in repeated cases since that time it has been held that error in sustaining a motion to direct a verdict is not waived because the party against whom it is directed also moved for a direction in his favor. See *Teeple v. Dredging Co.,* 137 Iowa 214; *Bank v. Improvement Co.,* 111 Iowa 432; *Walker v. Fruit Co.,* 113 Iowa 435. See, also, *Lonier v. Bank,* 153 Mich. 253 (116 N. W. 1088); *Poppitz v. Ins. Co.,* 85 Minn. 118 (88 N. W. 438); *Wolf v. Printing Co.,* 233 Ill. 501 (84 N. E. 614, 13 Ann. Cas. 369).

13. DIRECTION OF VERDICT: waiver of error.

The point must be considered as settled against the position taken by the appellee, and we are required to consider

whether the record shows any error in refusing to direct a

**14. INTOXICATING LIQUORS : recovery of price: pleadings: amendment.**

verdict for appellant, or in ordering a verdict for the appellee. Except in a single feature brought into the case by way of an amendment hereinafter referred to, both trials were had upon the same pleadings and substantially the same evidence. The amendment to the petition afterward filed alleges the fact to be that the sales were made to plaintiff under an agreement by which the title to the goods was to remain in the defendant until delivered to the plaintiff in Iowa and paid for by him. This amendment adds nothing whatever to the issues. It was alleged and claimed on the first trial that the sales were made in Iowa, and under that allegation it was competent for plaintiff to give evidence of every material fact tending to sustain that allegation, and surely if the alleged agreement has any tendency in that direction; it was admissible under the pleadings as they stood without amendment. Indeed such appears to have been the theory of counsel and court on the first trial, where the same matter was offered and admitted in evidence.

In disposing of the appeal from the order granting a new trial we had occasion to consider the merits of the case as disclosed by the record, and in stating our conclusions

**15. APPEAL: second appeal: law of the case.**

thereon we said, ''As to all sales except the first we have no doubt that the most plaintiff can claim is that he had a question for the jury.'' We also refused to hold with the defendant that plaintiff had made no case for the jury. On this appeal question is raised at the outset whether the conclusions so announced are to be treated as settled and to govern the case on the second trial and on this appeal. Counsel for appellee say that the statement of the court in the former hearing was pure *dictum,* and therefore not to be regarded as authoritative in the further progress of the case. But it was not mere *dictum.* Appellee was then contending precisely as now that the record conclusively showed him

entitled to recover, and that therefore the trial court did not err in setting aside the verdict for appellant. Appellant, on the other hand, was just as insistently contending that no ground whatever had been shown upon which a jury could properly find for the appellee. It was therefore no mere *dictum* or gratuitous or irrelevant expression of opinion when we said that under the record the most appellee could claim was that he had a case for the jury. The same observation is true as to appellant's claim that a verdict should have been directed in its favor. The issues joined make a case at law triable to a jury unless that right be waived. The sufficiency of the evidence to take that issue to a jury was determined upon the former appeal, and we think it should be regarded as the law of the case. *White v. Text-Book Co.*, 156 Iowa 210.

We shall not therefore extend this opinion, already too greatly prolonged, to discuss the evidence further than to say that if necessary to pass thereon we should have to repeat what we said on the former appeal that upon most of the facts which are essential to a determination whether the sales were made in Iowa, where the plaintiff resides, or in Wisconsin, the home and principal place of business of the defendant, there is no such concession or absence of conflict in the evidence as to justify the court in refusing to submit the issue to a jury, and there was therefore material error in directing a verdict for the plaintiff. It is quite apparent that defendant had some appreciation of the risk attending sales made in Iowa, and sought, in form at least, to make the contract of sale in each instance a Wisconsin contract; the same being lawful in that state. When and where the sale was complete and title to the property passed to the purchaser is largely a question of intent to be drawn, not alone necessarily from the writings made or the formal words employed, but also from the conduct of the parties and their methods of dealing. The answer to the question is nearly always a

16. Intoxicating Liquors: place of sale: evidence.

conclusion or inference to be drawn from a consideration of all the circumstances developed by the evidence, and is therefore a question of fact for the jury and not of law for the court. This case is not an exception to that rule. The written evidence fairly tends to show that the contract of sale was consummated or completed in Wisconsin, and if so, this action is not maintainable. *Bowlin v. Brandenburg*, 130 Iowa 220; *Hamilton v. Brewing Co.*, 129 Iowa 172; *Brewing Co. v. De France*, 90 Iowa 395; *Brown v. Wieland*, 116 Iowa 711. On the other hand, if while going through the form of a written Wisconsin contract to present a formal appearance of legality, the parties mutually disregarded or abandoned it, and the defendant thereafter sold and plaintiff bought the beer pursuant to an oral understanding or agreement which was in legal effect an Iowa contract, made in violation of the Iowa statute then plaintiff is entitled to recover. On these questions the facts are not so clearly established as to entitle either party to a directed verdict.

It follows from what we have said that the judgment entered upon the directed verdict and the order and judgment changing the record as to defendant's bill of exceptions must be reversed, and cause remanded for new trial.

*Reversed* on both appeals. All the Justices concur.

---

## SUPPLEMENTAL OPINION.

### TUESDAY, FEBRUARY 17, 1914.

PER CURIAM.—In a petition for rehearing, the appellee vigorously contends that the opinion heretofore filed in this case erroneously states the law applicable to the issues under discussion, and ignores or misstates certain material phases of the record. So far as the general merits of the controversy are concerned, the argument of the petitioner is largely a repeti-

tion or reassertion of the arguments pressed upon our attention
in the original hearing, and as we are still satisfied with the
views there expressed by us, we shall take no time for their
restatement or further discussion. There are, however, one
or two propositions insisted upon by counsel pertaining to
matters of practice which may properly have somewhat more
specific consideration.

I. The point is made that, after reversal of the trial
court's order amending the record of a filing of a bill of
exceptions, this court should have remanded the proceeding
to the trial court for a retrial of that issue.

17. APPEAL: correction of record: reversal: remand.

The exception cannot be sustained. We may,
for the purposes of this case, concede that
counsel is right in his claim that the proceeding for the correc-
tion of the record is special and legal in character, and that a
finding of fact therein having sufficient support in the evi-
dence is ordinarily conclusive on appeal. It may further be
conceded, for the purposes of this case, that, where such
question is tried and submitted for decision in vacation, a
vacation entry or order may be modified or set aside by the
court at any time before the record is completed and signed.
But it is still true that the right of a party against whom
such an order is reversed upon appeal to have the matter
remanded or retried is not without exception, and, if the
record will justify it, this court may reverse without a re-
mand and enter such order or judgment as should have been
entered below. Code, section 4139. Nowhere is the exercise
of this authority more appropriate than in a collateral pro-
ceeding to amend the record pending an appeal of the princi-
pal case which is thereby suspended or delayed. Due pro-
tection of its own jurisdiction when once invoked requires
this court to carefully scrutinize a belated proceeding in
the trial court to so change the record as to defeat that
jurisdiction and prevent a review of the judgment appealed
from. If, then, the hearing in the trial court be full and
complete, no offered evidence excluded, and nothing to indi-

cate that any other or different showing could be made upon a retrial, and this court finds that the evidence will not support an order changing the record, it will not hesitate to set it aside and make such order as we hold the trial court ought to have entered. Sound policy and a due regard for the efficient administration of the law demand that the settlement of such collateral controversy or other obstructive proceedings be not unnecessarily prolonged. The record in this case well illustrates the propriety of this rule. The defendant's appeal was taken on February 16, 1909, and the abstract was prepared for the September, 1909, term of this court. When the appeal was taken and when the abstract was filed, the record showed in unequivocal terms that the shorthand notes were duly certified by both reporter and judge showing that the notes had been duly certified and filed in proper time. In other words, the record, as it then existed in the trial court and here, showed this court to have acquired full jurisdiction to hear, try, and dispose of the appeal on its merits. Not until ten months after the appeal had been perfected and after appellant had expended time and money in the preparation of its case for submission did the appellee (though, according to his own showing, aware from the outset of the alleged defect in the certification of the bill) for the first time raise his voice in objection and applied to the court for a change in its record, whereby the defendant should be deprived of the benefits of its appeal, and this court ousted of jurisdiction to pass upon its merits. It should go without saying that, under such circumstances, the law ought and does require that such application shall not be granted except upon proof of the clearest and most satisfactory character. *Nunc pro tunc* entries, except where the alleged omission or mistake is evident upon the face of the record, are not favored in law. As said by Chief Justice Marshall, such proceedings are of "so much delicacy and danger, . . . that some of us question the existence of the power." *Bank v. Dudley*, 2 Pet. 522 (7 L. Ed. 496). To the same point the Minnesota

court has said: "While we admit the power to amend a record after the term has passed in which it was made up, we would deprecate the exercise of such power in any case where there was the least room for doubt about the facts upon which the amendment was sought to be made." *Bilansky v. State*, 3 Minn. 427 (Gil. 313).

In *Mitchell v. Overman*, 103 U. S. 64 (26 L. Ed. 369), the court, speaking by Justice Matthews, says: "A *nunc pro tunc* order should be granted or refused, as justice may require, in view of the circumstances of the particular case." In the opinion already filed, after a full consideration of the record, we held that the evidence did not sustain the order made by the trial court, and that the application ought to have been denied. As already indicated, the record contains all the evidence; none appears to have been excluded; there is nothing to indicate the existence of other evidence bearing upon that feature of the case, and we think it clearly within the authority of this court to correct the error below by treating the application to amend the record as denied and disposing of the appeal in the principal case as if such amendment had never been made.

II. It is asserted for the appellee with much reiteration that the defendant consented to the discharge of the jury, and thereby waived the error if any in directing a verdict. This insistence can be explained only upon the theory that counsel has failed to read the record of his case. Turning to the abstract, we find there recorded in unmistakable terms the proceedings which followed the conclusion of the testimony in the case, to wit: (1) The plaintiff moved for a directed verdict in his favor. (2) After argument of said motion and after asking that certain evidence be stricken from the record, defendant filed a motion for a directed verdict in its favor.

18. DIRECTION OF VERDICT: consent.

Thereupon, with both of these motions pending for a ruling, the trial court proceeded to discuss the case, stating its views of the effect of the evidence and of the law applicable

thereto, concluding the same as follows: "These and other reasons lead me . . . to feel that this motion to direct a verdict for plaintiff ought to be sustained, and it is sustained, and the agreement of the parties to the case to the effect that a juror be called from the box to sign a formal verdict should be waived by both plaintiff and defendant and be considered as though done is followed and no advantage to be taken by either party. The motion filed by the defendant contemporaneously with the finding as to judgment for plaintiff for a directed verdict is overruled, and defendant excepts."

Following this ruling and announcement, which was taken down by the official reporter, the court, having stated that the finding for the plaintiff would be for the entire amount of the admitted payments by him to the defendant for the purchase of beer, except a certain designated carload, suggested that counsel agree upon the proper computation, whereupon the defendant's counsel immediately responded: "The defendant declines to agree upon any amount, and objects to such amount being determined by the court. Defendant also excepts to the ruling sustaining plaintiff's motion. . . . and to the order overruling defendant's motion for a directed verdict." This appears to have been the record at the close of January 22, 1909. On the following day a further entry appears to have been made, which recited the impaneling of the jury, the hearing of the testimony, the presentation of a motion by each of the parties for a directed verdict, and that formality of directing the jury to return a verdict was waived and the jury therefore dismissed. Following this recitation, the court proceeds to state certain findings of a fact concerning the dealings between the parties, and concludes with an entry of judgment for the plaintiff for $10,346, with interest and costs. In other words, the motion to direct a verdict for plaintiff was expressly sustained, and defendant's motion for a directed verdict expressly overruled, both on January 22, 1909. There is nowhere in the

record any statement of consent by the defendant to a discharge of the jury, nor of any act or concession which implies any consent. It is true that, after the ruling was made which took from the jury all right to further consider the case, and it had no further function to perform therein, except the liability of one of its members to be called to the desk to sign a formal verdict registering the mandate of the court, it does appear that the parties consented that this formal act of calling of a juror to put his name to the verdict should be waived and ''considered as though done,'' and that no advantage of such informality should be taken by either party. Whether the jury were discharged at that time or the formal order was delayed until the following morning was immaterial. It is enough that, without a waiver or consent of any kind, the court first sustained the plaintiff's motion for a directed verdict. This left defendant's motion for a verdict without anything on which to operate. The case was at an end except the perfunctory act of signing a verdict and the entry of judgment. The consent that the directed verdict should be treated as though formally signed can by no subtlety of reasoning be said to be a consent to the act of the court in refusing to submit the case to the jury on its merits.

The claim of appellee that appellant either expressly or impliedly waived its right to a jury or its right to insist upon the error in directing a verdict is wholly without merit. The opinion as heretofore announced is therefore adhered to. All the Judges concurring.